## The C. I. R. Co. v. The M. & A. R. Co.

1. **Railroads: RIGHT OF WAY: ABANDONMEMT.** The provisions of section 1260, Code, as amended by act of 1874, in relation to the abandonment of a railroad line, clearly contemplate there may be an abandonment of a part of a constructed railway. Whether an abandonment exists depends upon the circumstances of each case.

2. ———: **STATUTE CONSTITUTIONAL.** The statute, section 1260, Code, as amended by act of 1874, is constitutional. Following *Noll v. D. B. & M. R. Co.*, 32 Iowa, 66. The constitutionality of so much of the statute as provides for "assessing the damages," will not be inquired into in equity, there being a complete remedy at law.

3. ———: ———: **BECK, JUSTICE,** *dissenting, held:* that a railroad, through its entire extent, must be regarded as a unity; that while there was an intention to complete the work, there could be no abandonment; and that in this case no part of plaintiffs' line had been abandoned.

*Appeal from the Polk Circuit Court.*

Thursday, December 8.

The defendant under the right of way act commenced proceedings and sought to condemn a portion of the right of way belonging to the plaintiff and this action was brought to restrain such proceedings. The hearing was had upon petition, answer, exhibits and affidavits filed by both parties. The injunction was refused and the plaintiff appeals.

*H. E. J. Boardman* and *Parsons & Runnells*, for appellant.

*Trimble, Carruthers & Trimble* and *W. W. Baldwin*, for appellee.

SEEVERS, J.—The pleadings are lengthy and it is not deemed necessary to set them out. The material facts we find to be, that in 1865, the Iowa Central Railroad Company was organized for the purpose of constructing a railroad from the "south

line of the State by way of Oskaloosa to Cedar Falls, in Black Hawk county," and previous to 1868, said company procured the right of way for the purpose aforesaid from the town of Moulton to Albia. We do not understand the right of way was procured for the entire distance between said towns, but for a portion of such distance only. Some grading and perhaps other work on said right of way was done by the company aforesaid prior to and possibly during 1868.

In 1869 the Central Railroad Company of Iowa was organized, and it acquired by purchase, all the rights of the company just named south of Oskaloosa, including the right of way, grading, and other work done thereon between Moulton and Albia, and it is the right of way between said towns the defendant seeks to condemn under the right of way act.

Beginning in 1869, and including 1871, the Central Railroad Company of Iowa constructed and purchased a line of railroad from Albia north to Northwood, and the same has been continuously operated.

After 1871 additions were made to said road consisting of about ten miles of coal and side tracks and the erection of four station-houses, and in that and the succeeding year the plaintiff caused the line between the towns of Albia and Moulton to be surveyed. In October, 1874, the last named company became financially embarrassed and a receiver was appointed who had charge of the road until June, 1879. Previous to that time the road was sold under a decree of foreclosure and purchased by a trustee, who under the direction of the court turned it over on the 17th day of June, 1879, to the plaintiff, who had been duly organized in May of that year.

The petition states that neither of said companies abandoned the line or right of way between Moulton and Albia, but the construction of the road between said towns was prevented by financial embarrassment and that plaintiff "now intends and expects to proceed with dispatch to build the whole distance

from Moulton to Albia, or cause it to be built by other parties for the plaintiff and in its interest." These allegations are denied in the answer.

The condemnation proceedings were commenced on the fifth day of July, 1879, and the notice to the sheriff directed him to have the right of way aforesaid appraised as the property of the Iowa Central Railroad Company, or its representatives, under and in pursuance of an act of the General Assembly, passed in 1870, as amended by an act passed in 1874, to amend section 1260 of the Code. The notice directed the sheriff to have assessed the road-bed and right of way "excluding the work done thereon."

The act of 1870 is in substance the same as sections 1260 and 1261 of the Code, and the act of 1874 amending section 1260 is as follows:

"In any case where a railway constructed in whole or in part has ceased to be operated or used for more than five years, or in any case where the construction of a railway has been commenced by any corporation or person and work on the same has ceased, and has not been in good faith resumed for more than five years, and the same remains unfinished, it shall be deemed and taken that such corporation or person thus in default has abandoned all right and privilege over so much as remains unfinished, as aforesaid, in favor of any other corporation or person which may enter upon such abandoned work as provided in section 1261" of the Code. This statute went into force on the fourth day of July, 1874. Section 1261 of the Code provides that the right of way, work and grading so abanonded may be condemned as other property, "but parties who have previously received compensation in any form for the right of way on the line of such abandoned railway which has not been refunded by them, shall not be permitted to recover the second time, but the value of such road-bed and right of way, excluding the work done thereon when taken for a new

company, shall be assessed to the former company or its legal representative."

I. Has there been an abandonment of the line between Moulton and Albia within the meaning and intent of the statute? It is insisted there has not, because there must be an abandonment of the whole road or projected line. That the statute does not contemplate a part of a road shall be regarded as abandoned when the greater portion has not only been constructed but is being actually operated. If such had been the legislative intent, it would, it is said, have been without doubt clearly expressed as being such part which has ceased to be operated or upon which part work has ceased for the period named, should be regarded as abandoned. The question to be determined is one of fact and no general rule can be laid down applicable to all cases. The statute clearly, we think, contemplates there may be an abandonment of a part of a constructed railway.

1. RAILROADS: right of way: abandonment.

But the fact that the work of construction has ceased for the period named, may, or may not, amount to an abandonment of a part of the contemplated road. Each case must be solved in accordance with the facts and circumstances.

The usual and ordinary mode of constructing railways, we understand to be, is to commence at a recognized terminus, and prosecute and finish the work of construction continuously from such point. Such was not done in this instance. But when the work of construction was resumed in 1869, at Albia, it proceeded steadily and continuously from that point north, instead of south to Moulton. If there were sufficient reasons for taking this course the evidence fails to so show.

The right of way in question had been procured at that time and grading had been done thereon. Why was it not then or at some subsequent time utilized? Nothing, except the survey above stated, toward the construction of the road was done for a period of five years preceding the fourth day of July, 1879. The case therefore is within the statute unless the reasons

urged by the plaintiff excuse performance, or tend to show an intent not to abandon the portion of the road aforesaid.

The survey alone does not, we think, show a resumption of the work of construction in good faith, conceding it was made after July 4th, 1874. Nor can the construction of coal and side tracks, and the erection of station-houses between Albia and Northwood, have any tendency to show the road between Moulton and Albia had not been abandoned. Whether it was absolutely essential the side tracks aforesaid should be constructed has not been shown. But conceding it was, then the intention to improve and extend the road between Albia and Northwood has been shown, while that portion between Moulton and Albia, was for the time being, at least, abandoned or permitted to go to waste. There is not a single fact or circumstance which tends to show an intent to resume work south of Albia until after the commencement of the condemnation proceeding, and all there is now is an assertion on the part of the plaintiff to either proceed with the work of construction, or have it done by some one in its interest. If this be sufficient under the statute it comes too late. The fact the company under whom the plaintiff claims became financially embarrassed and was placed in the hands of a receiver, and therefore could not finish the work of construction, cannot be regarded as a valid excuse under the statute which embraces all cases or " any case." We have no doubt such a case was contemplated by the statute. Because of financial embarrassments the construction of railways frequently cease for a longer or shorter period, and the General Assembly in its discretion has fixed a time when the rights obtained by such company shall be regarded as abandoned.

II. It is claimed that the statute is unconstitutional for several reasons, which need not be stated. The statute of 1870, 2. ——: stat- which, so far as the present objection is concerned ute: constitutional. is identical with that under consideration, was before the court in *Noll v. D. B. & M. R. R. Co.*, 32 Iowa, 66,

and it was there held it was a valid exercise of legislative power. We are therefore relieved from stating the grounds upon which we conclude the statute is constitutional, deeming it sufficient to say the case cited is amply supported by authority.

III. It is further insisted so much of the statute as provides in assessing the damages the "work done" shall be excluded is unconstitutional. This question cannot, unless we depart from a well settled principle of equitable jurisdiction, be determined in this action, because there is a full and complete remedy at law. An appeal has been taken in the condemnation proceedings, and on the trial thereof the plaintiff can offer to prove the value of the "work done," and if it be objected this cannot be shown because of the statute, the plaintiff may reply that it is unconstitutional, and thus there would be raised the precise question we are urged to determine in this equitable proceeding. It is not the province of equity to interfere when there is a complete remedy at law, and especially is this so when it is sought to restrain the action at law pending the hearing in equity.

IV. We deem it proper to say that as the defendant seeks to condemn under the right of way act we have not deemed it necessary to consider the claim made to the right of way in question which the defendant insists was obtained through one Hill. We think the only question in the condemnation proceeding is how much damages has the plaintiff sustained by reason of the appropriation of its property.

AFFIRMED.

BECK, J., *dessenting.*—I. I reach the conclusion that the line of the railroad in question was not abandoned by the plaintiff under any of the statutes which are claimed to be applicable to the case.

I am of the opinion that a railroad is to be regarded as a single work from one end of its line to the other—that the line, however long, cannot, unless under contract, as in

case of a mortgage, a deed of trust or other liens, or in the acquisition of the right of way, be broken up and a part of it disposed of and treated as an independent structure.

The statutes of the State regard a railroad through its whole line as a unity; it is so taxed. A part of the road, except in the case of a lien, cannot be sold on execution. I am of the opinion that the whole road through its entire extent is to be regarded as a unity. How long a time has a corporation to build a line of road? It is not limited by law. Several of the railroads of the State were more than ten years in the construction of their whole lines. Their routes were established and their surveys made for more than ten years prior to their completion. We have held that the survey is a part of the work of constructing a railroad. *C., R. I. & P. R. R. Co. v. Grinnell*, 51 Iowa, 476 (see p. 482). Now the Central Railroad was surveyed and located from Albia to Moulton; thus the work of construction was begun. The building of the road was prosecuted at the other end. Financial embarrassments and the appointment of a receiver delayed its completion. Just such a thing occured in the case of more than one other railroad of the State. The affidavits filed in the case show that there was no purpose of abandondment of the part of the line in controversy. The work was in contemplation, but not prosecuted on account of the embarrassed condition of the corporation. The part of the road in question must be regarded in connection with the finished and operated portions. While there is an intention of building it, we cannot hold that it is abandoned. Of course a long continued failure to build without any cause therefor, we might regard as evidence of abandonment. But causes are shown for the temporary suspension of the work, as financial embarrassment, the receivership, etc., etc.

I think the claim of defendant under the Hill title is without foundation. No right was acquired by the Quincy Com-

pany to the road. It took possession of the line as a trespasser. In my opinion the judgment of the Circuit Court ought to be reversed.