## NOLL v. THE DUBUQUE B. & M. R. R. Co.

1. **Railroad:** RIGHT OF WAY: ABANDONMENT. In contemplation of law, the right of way for a railroad, acquired under the general right of way act, is taken by the *State* for public use; and it is therefore, competent for the legislature to provide for its transfer to another company, upon the failure of the company for whom it was first condemned to construct its road for a prescribed period, and upon compensation being made to the latter. This is declared to be the object of chapter 91 of the acts of 1870.

2. **Easement:** NON-USER. An easement acquired by express grant instead of by prescription is not lost by mere non-user, where the owner of the servient estate does no act which *prevents* the use.

*Appeal from Dubuque Circuit Court.*

WEDNESDAY, JULY 26.

THIS was an appeal to the circuit court from an assessment of damages by commissioners, appointed by the

sheriff, under the right of way act, for taking a railroad right of way over the land of the plaintiff. On the trial in the circuit court there was a verdict and judgment for plaintiff for $660, from which defendant appeals. The material facts are stated in the opinion.

*Shubael P. Adams* for the appellant.

*Wilson & O'Donnell* for the appellee.

MILLER, J. — The record shows that in 1857 the Dubuque and Pacific Railroad Company, in contemplation of 1. RAILROAD: constructing a railroad from Dubuque to the right of way: abandonment. mouth of the Tete Des Morts, near the north line of Jackson county, took and condemned, in pursuance of the statute, and paid the plaintiff the sum of $1,250, for the same right of way involved in the present proceeding; and said railroad company partially constructed their road-bed on said right of way and left the same unfinished, and no work has since been done thereon, but the said line of road remains unfinished. In 1860 the Dubuque and Sioux City Railroad Company acquired by deed and decree of foreclosure all the property and rights of property of the Dubuque and Pacific Railroad Company, including the right of way in question. In June, 1870, the appellant proceeded to condemn to its use the said right of way, under and in pursuance of the provisions of chapter 91 of the laws of 1870, which are as follows:

"SECTION 1. That in any case where a railroad, constructed in whole or in part by a corporation or other person under the laws of this State, has ceased to be operated or used for more than ten years, or in any case where the construction of a railroad has been commenced by any corporation or person within the State, and the work on the same has ceased for more than ten years, and such railroad still remains unfinished through the negligence

of the corporation or person who undertook to construct the same, it shall be deemed and taken that the corporation or person thus in default has abandoned and surrendered all right and privilege to control over so much of the line of their road as remains unused or unfinished as aforesaid.

"SEC. 2. In every case of abandonment of the work of operating or constructing a railroad within this State as provided in the preceding section, it shall be lawful for any other corporation or person to enter upon such abandoned work or any part thereof, and to acquire the right of way over the same, and the right to any unfinished work or grading found thereon and the title thereto, by proceeding in the manner provided by law for taking private property for works of internal improvement, conforming in all particulars, as near as may be, to the provisions of chapter 55 of the revised laws of Iowa. *Provided*, that parties who have previously received compensation in any form for the right of way on the line of such abandoned road-bed, the consideration of which has not been refunded to them, shall not be permitted to recover the second time, but the value of such road-bed and right of way, exluding the work done thereon, when taken for a new company, shall be assessed to the former company or its legal representative."

Before proceeding to have the damages assessed, the appellants made a demand for the right of way upon the appellee, he being in possession of and occupying the premises. The court below instructed the jury in the second and fourth paragraphs of the charge as follows :

"2. A railroad corporation in this State, by the appropriation of land for its road-bed, does not acquire an absolute title to the land taken, but only an easement ; and the fee remains in the person from whom the right of way is taken ; and, upon abandonment of the road, all interest in the land appropriated for the right of way would revert to the owner of the real estate from whom it was taken, in the

same manner as the right of way would in case of the vacation and discontinuance of a common, public highway."

"4. If the company appropriating the right of way have omitted for ten years or more to make any use of the way or to work upon its construction, it may be considered as abandoned. The company may, however, show that it was not abandoned. But a claim made after ten years non-user, upon another company proposing to use it, would not be sufficient alone to rebut the presumption of abandonment arising from ten years non-user."

The court also refused to give, at the request of the defendant, the following instruction, viz. :

"If you believe from the evidence that the right of way in question is the same right of way and over the same location as that condemned by the Dubuque and Pacific Railroad Company in 1857, and that plaintiff received full compensation for the same under that condemnation ; and you further find that work on the Tete Des Morts branch, including the line over plaintiff's land, through the negligence of said Dubuque and Pacific railroad corporation, had ceased for more than ten years before the commencement of the present proceedings, and that said work has not since been resumed, either by said company or its legal representatives, and said road still remains unfinished, it will be your duty to find for defendant."

In refusing this and giving the former instructions there was error. The case shows that the land in question was condemned according to law for a right of way for the Dubuque and Pacific railroad, and full compensation therefor made to the plaintiff more than ten years prior to the commencement of the present proceedings. The corporation thus condemning and paying for the right of way acquired an easement in the land thus condemned. In the theory of the law an easement thus acquired is so acquired to the public use. Upon no other theory can the power of eminent domain be exercised ; it being well settled that the

legislature has no power to take the property of the citizen for any but a public use. *Bradley* v. *N. Y. & New Haven R. Co.*, 21 Conn. 294; *Symonds* v. *City of Cincinnati*, 14 Ohio, 147; *Emsbury* v. *Conner*, 3 Comst. 511; *Stewart* v. *Board of Supervisors of Polk Co.*, 30 Iowa, 9, and cases there cited. The power to take private property for public use is one of the sovereign powers of the State. It is a necessary attribute of sovereignty in the State rather than any reserved right in the grant of property to the citizen. It can, however, be exercised under our constitution only for public uses, and then only upon making just compensation. In contemplation of law, therefore, when the right of way in question was taken through plaintiff's lands, it was taken by the State for public use, and not simply by and for the private use of the railroad company in whose behalf it was taken, although the compensation for the property taken was paid by the railroad corporation.

The easement thus acquired by the railroad company is, therefore, in the nature of a grant from the State for the uses and purposes fixed by law; and it is entirely competent for the legislature, when the railroad company fails to carry out the purpose and object of the grant, by failing to construct and operate their railroad, to transfer the easement to another company, upon compensation being made to the former company. It is simply an exercise of the power of eminent domain. This was the object and is the effect of the act of 1870 before set out.

It is claimed, however, that the railroad company first acquiring the right of way, having ceased or failed to use 2. EASEMENT: the same for a period of more than ten years, non-user.        and the plaintiff being in the actual occupancy and possession thereof for that period of time, the easement became extinct, and reverted to the plaintiff.

The easement in this case was not acquired by prescription, but by express grant, and a non-user of an easement

thus acquired is not extinguished if the owner of the servient estate does no act which *prevents* the use. *Jewett* v. *Jewett*, 16 Barb. 150 ; *White* v. *Crawford*, 10 Mass. 183 ; *Smiles* v. *Hastings*, 24 Barb. 44 ; *Arnold* v. *Stevens*, 24 Pick. 106 ; *Bannon* v. *Augier*, 2 Allen, 128 ; *Jennison* v. *Walker*, 11 Grey, 425, Washb. on R. P. 56.

In *Barlow* v. *The Chicago, Rock Island and Pacific R. Co.*, 29 Iowa, 276, this court held that a right of way acquired by deed was not forfeited or lost by a failure to occupy it for a period of thirteen years, growing out of delay in the construction of the road. And the rule is there recognized that mere non-user of an easement of this character, acquired by deed, will not operate to defeat or impair the right.

The judgment of the circuit court is

