WILLIAM C. REMEY et. al., v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

<table>
<tr><td>116</td><td>138</td></tr>
<tr><td>123</td><td>406</td></tr>
<tr><td>123</td><td>407</td></tr>
<tr><td>123</td><td>408</td></tr>
</table>

Abandoned Right of Way: REFUNDING DAMAGES: *Second condemnation.* Code, section 2015, relating to the non-user of rights of way, provides that if the railway is not used or operated for eight years, or if, its construction having been commenced, work has ceased and has not been in good faith resumed for eight years, the right of way, including the road bed, shall revert to the owners of the land, from which it was taken. Section 2016, relating to the condemning of abandoned rights of way provides that in case of abandonment any other corporation may enter on the abandoned work and acquire the right of way but that parties who have previously received compensation in any form for such abandoned right of way, which has not been refunded by them, shall not be permitted to recover the second time, and the value of such road bed, excluding the work done thereon, shall be asessed for the benefit of the former company. *Held,* that, where a right of way previously condemned has not been used for over eight years, another company cannot condemn it as an abandoned right of way without compensation to the owners, though damages previously paid to prior owners have not been refunded, since by such non-user the right of way reverted to the owner of the fee and ceased to be an "abandoned right of way," within section 2016.

MCCLAIN, J., specially concurring.

DEEMER AND SHERWIN, JJ., dissenting.

Stare Decisis: *Not applicable to descisions disregarding clear statutes.* Where statutes are explicit, and their purport is not to be doubted, previous decisions giving them a wrong construction, made in passing on a question not argued, and overlooking a portion of the statute not involved, will not be adhered to.

*Appeal from Monroe District Court.*—HON. ROBERT SLOAN,
Judge.

FRIDAY, FEBRUARY 14, 1902.

CONDEMNATION proceedings of a railroad right of way.
A sheriff's jury was appointed at defendant's request to
assess the damages plaintiffs might sustain by reason of the
taking of the right of way through their land, and
returned the following verdict: "We do not find
that he or any of the prior owners of said land
have ever paid back the damage which was originally paid
by the corporation that first obtained the right of way.
Guided by the law of this state in such cases made and
provided, viz., section 2016 of the Code of 1897, we do
hereby assess the damages of the said property at one hun-
dred twenty-five dollars, to be disposed of as provided in
said section 2016 of the Code, and return this as our find-
ing and verdict." The defendant appealed to the district
court; and there filed an answer, in which it alleged
that in 1867 plaintiff's grantors received from the Iowa
Central Railroad Company (not defendant) the sum of
$400 as damages in full for the appropriation of this identi-
cal right of way; that in 1870 the roadbed in question was
graded; that in 1879 the Moulton & Albia Railroad Com-
pany took possession thereof, caused it to be condemned
as an abandoned right of way, constructed a road thereon,
and operated it until 1888, when its use or operation ceased
until 1898, the rails being moved the year previous; that
in 1898 the defendant entered upon said roadbed and right
of way, constructed its railroad thereon, and is now operat-
ing the same; that plaintiffs, not having refunded the dam-
ages previously received, are not entitled to compensation
in this action. The plaintiffs demurred to this answer on
the ground that the right of way had not been used nor the
road operated since 1888,—for more than eight years,—

and therefore had reverted to the owners of the land from which taken, and might not be again condemned without compensation. This demurrer was sustained by the district court, Hon. F. W. Eichelberger presiding, and later an order was entered, Hon. Robert Sloan presiding, confirming the assessment of damages and directing the sheriff to pay same to plaintiffs and defendant to pay costs. The defendant appeals.—*Affirmed.*

*T. B. Perry* and *N. E. Kendall* for appellant.

*Wm. A. Nichol* and *Townsend & Mason* for appellees.

LADD, C. J.—The Moulton & Albia Railroad Company abandoned the right of way in 1888, ten years before taken by the defendant and a railroad constructed and operated thereon by it. The damages originally assessed and paid the owners for the appropriation of the right of way have never been refunded, and it is insisted by appellant that, until this has been done, none can be claimed by their grantees for the taking by defendant. On the other hand, plaintiffs claim the right of way reverted to them at the end of eight years, of non-user and cannot be taken again without compensation. The decision of this shortly defined issue depends upon the construction to be given the sections of the Code on the subject.

"Non-user of Right of Way. Where a railway constructed in whole or in part has ceased to be operated for more than five years; or where the construction of a railway has been commenced and work on the same has ceased and has not, in good faith, been resumed for more than five years, and remains unfinished; or where any portion of any, such railway has not been operated for four consecutive years, and the rails and rolling stock have been wholly removed therefrom,—it shall be treated as abandoned, and all rights of the person or corporation, constructing

or operating any such railway, over so much as remains
unfinished or from which the rails and rolling stock have
been wholly removed, may be entered upon and appropri-
ated as provided in the next section. If the railway or any
part thereof shall not be used or operated for a period of
eight years, or if, its construction having been commenced,
work on the same has ceased and has not been in good
faith resumed for eight years, the right of way, including
the roadbed, shall revert to the owner of the land from which
said right of way was taken." Section 2015, Code.

This, with the section following, is a re-enactment of
sections 1260 and 1261 of the Code of 1873, as amended
by chapter 15 of the acts of the Eighteenth General As-
sembly, in force during the period involved in this action.
As previous acts throw little, if any, light on the construc-
tion to be given, they need only be referred to. See sec-
tion 1295, Code 1860; chapter 91, Acts Thirteenth General
Assembly; chapter 65, Acts Fifteenth General Assembly.
The genesis of a statute alone will not justify the rejec-
tion of a portion of it, when capable of being accorded a
meaning in harmony with other portions. The evident
object of construction is to ascertain the meaning and in-
tention of the lawmakers, as exemplified in the statutes
under consideration, and to give these effect. It will be ob-
served that this section undertakes to define the circum-
stances under which a right of way will be treated as aban-
doned. This may happen in three ways: The first and
third relate to the operation of a railway completed in whole
or in part, and abandonment is established by showing that its
operation has ceased for five years, if the rails or rolling
stock remain; but, if these have been removed, then the
time is but four years. The matter of operation is not
involved in the second. If work on an unfinished road, once
begun, has ceased for five years and not been in good faith
resumed, the right of way is to be treated as abandoned.
Regardless of what might amount to an abandonment at

common law, this section clearly defines precisely what shall be treated as, and constitute, an abandonment within its. meaning; and it is such a right of way, so abandoned, which "may be entered upon and appropriated as provided in the next section." But, suppose it is not "entered upon and appropriated;" what is to become of it? If the period of non-user or failure to resume work has extended to eight years, the right of way reverts to the "owner of the land from which said right of way was taken." "Revert," as here used is a technical word, and is to be accorded a meaning as such. Code, section 48, par. 2. It is the return to the owner of the fee of the easement formerly appropriated, or, perhaps, more accurately speaking, the removal of the burden cast upon the .fee. The instant the right of way reverts to the owner, the easement, with all its incidents, is extinguished and the owner of the tract from which taken restored to complete dominion over the entire property. See Lewis, Eminent Domain, section 596; *Smith v. Hall,* 103 Iowa, 96. This is put beyond question by the wording of the statute, mentioning not only the right of way as reverting, but the roadbed as well. No condition is attached to the reversion, and it is pure assumption to say that the right of way reverts to the owner, subject to the right of some company, without any interest therein, to seize the land formerly a right of way and appropriate to its own use without compensation to any one. Nothing in the letter or spirit of these statutes justifies an attempt to read into them such a condition. After reversion, there remains no right of way, abandoned or otherwise. Until then, after being treated as abandoned it may be entered upon and appropriated as pointed out in the next sections, which reads:

"Condemning Abandoned Right of Way. In case of abandonment as provided in the preceding section, any other. corporation may enter upon such abandoned work, or, any part thereof, and acquire the right of way over the same, and the right to any unfinished work or grading found'

thereon, and the title thereto, by proceeding as near as may be in the manner provided in this chapter, but parties who have previously received compensation in any form for the right of way on the line of such abandoned railway, which has not been refunded by them, shall not be permitted to recover the second time. The value of such roadbed and right of way, excluding the work done thereon, when taken for a new company, shall be assessed for the benefit of the former company or its legal representative."

Note that it is the "abandoned right of way" that may be condemned, not the land or an easement therein after it has ceased to be a right of way. After the right of way has reverted to the owner, none is left for condemnation. It is only up to that time that a right of way may be treated as abandoned. It then belongs to the former company, and to it, and not the owner of the fee, the statute requires compensation to be made. It is only when damages have never been awarded, or if awarded, have never been paid the owner, or, if paid, have been returned by him, that compensation will be made to him, instead of the company; for the statute proceeds on the theory that the taking is from it, if the easement has been acquired by the payment of damages assessed, and these not restored by the owner. The last clause of section 2016 is conclusive on this proposition; for under it the value of the roadbed and right of way are to be assessed for the benefit of the former company, and this evidently would not be exacted after such company had lost its interest in the property, through reversion to the owner. This is not a contest between the company abandoning the right of way and the owner of the fee. For all that appears that company may have ceased to exist. Indeed, the claim of defendant, reduced to its last analysis, is that it may appropriate the right of way after reversion without compensation to any one. If this may be done

2 years after reversion, as here sought, it can as well be accomplished 50 years thereafter. If so, the owner of the fee can never occupy with safety, as at any moment it might be seized from him by an entire stranger, without even paying the value of the improvements. But it is said he could have avoided this contingency by tendering back the damages received. Ordinarily the value of the land for the use to which it is adapted is in a large measure destroyed by the excavations and gradings necessary in the construction of the roadbed, and to restore it to a condition suitable for cultivation might well have been expected to involve an expense approximating its worth when this has been done. Besides, it would be absurd to require an owner to pay one company in order to prevent another, having no possible connection with the first, from seizing his property; and, in event the first had ceased to exist, even this remedy must inevitably fail. Again, it is said that the right of way might be acquired by adverse possession. This could happen, but never by one who takes and holds possession in recognition of the right of any company so wishing to appropriate the land at any time as a right of way.

Having now stated the purport of these statutes, which seem too plain to call for construction, we turn to the previous decisions of this court. *Noll v. Railroad Co.,* 32 Iowa, 66, construed statutes containing no provision for reversion of the right of way to the owner of the fee, and hence is not in point. It was there held that an easement conveyed, instead of condemned, did not, because of non-user, revert to the owner. On this point the authorities are in sharp conflict, and those announcing the doctrine of *Noll's Case* do so on the theory that the land, having been acquired for a public use, reverts to the state, rather than to the former owner, and may be disposed of by it only either for a public or private use. Lewis, Eminent Domain, section 596 *et seq.* The interest in the right of way, under subsequent statutes, has since been held to

be precisely the same whether granted or condemned. *Brown*
*v. Young,* 69 Iowa, 625. And the legislature has obviated
the result of the decision in the *Noll Case* by enacting
that the right of way shall revert to the owner of the land
out of which taken, rather than to the state, regardless of
how acquired, when there has been eight years of non-user.
The next case is the appeal in *Dubuque & Dak. Ry. Co. v.*
*Diehl,* 64 Iowa, 635, from an order sustaining a demurrer
to the plaintiff's answer to the petition of intervention. This
answer alleged the abandonment began in 1872, and that
construction again commenced on a different part of the road
in 1879 and was continued till 1881. The two points argued
were (1) whether resumption of the work on the line, though
not on the particular part in controversy, would interrupt
the running of the statute, and, (2) if it did not, whether
the right of way reverted in eight years. It was a contest
for damages assessed between a company abandoning the
right of way and the owner of the fee. From reading the
opinion, it is evident the point now involved was given no
attention. The court declined to consider the contention of
the parties, and held the failure of the owner or his grantor
to return the damages previously exacted precluded the
former from setting up any claim to the damages last assessed.
The decision on this point, not argued by the parties, seems
to have been based on the relations of the then owner and
his grantor, and on the concessions in favor of the appellee
"that there was an abandonment in contemplation of law."
Nowhere in the opinion is the matter of the reversion of the
right of way to the owner mentioned, nor is it given any
consideration as bearing on the necessity of returning dam-
ages before demanding others for a second appropriation
after the entire extinguishment of the easement. "Former
decisions should only be disturbed on great consideration;
for courts have no assurance of being wiser than their
predecessors. But when the applicability of law is lost
sight of, because not questioned, in passing upon its validity,

there is no just ground for halting in reaching a right con-
clusion, in harmony with the voice of reason and authority;
for in such event the point has never been determined, save
inferentially." *Washburn-Halligan Coffee Co. v. Mer-
chants' Brick Mut. Fire Ins. Co.,* 110 Iowa, 423.   There
can be no doubt but that *Chicago, M. & St. P. Ry. Co. v.
Bean,* 69 Iowa, 257, was rightly decided.   There the right
of way was first condemned in 1870 (in October, as appears
from the petition), and nothing done until 1878, when sold
to the plaintiff, by whom the road was constructed in May
or June of that year.   The object of the suit was to enjoin
the owner from prosecuting *ad quod damnum* proceedings.
Chapter 15 of the Acts of the Eighteenth General Assem-
bly, quoted in part of the opinion as contained in sections
1260 and 1261 of Miller's Code, was not enacted until
1880, some two years after the land had been taken by the
plaintiff and the road constructed.   This being true, that
chapter had no proper bearing in fixing the rights of the
parties, which had accrued two years before its enactment.
Under section 1260 the Code of 1873, as amended by chap-
ter 65 of the Acts of the 15th General Assembly, the rail-
road company had the absolute right to enter after five years
of non-user.   The expressions in the opinion concerning
the chapter of the act of 1880 mentioned must be regarded
as *dicta.*   This appears on the face of the opinion, upon as-
certaining that the amendment to the section of Miller's
Code   mentioned   first   appeared   on   the   statute   book
as stated.   It   might   be   suggested   that   a   stranger   to
our law would think otherwise from reading the opinion.
But we are more concerned with the fact, than appearances,
in estimating the value of a decision as a precedent.   Again,
a correct conclusion is reached, because there was a non-user
of less than eight years, and the court well said "that, not-
withstanding there has been an abandonment of the line,
the landowner shall not be entitled to be paid twice for
the right of way."   We now say that, before the lapse

of eight years the right of way remains intact, and may be condemned as such, but for the benefit of the former company only, with damages payable to the owner of the fee when those formerly assessed have not been paid, or, if paid, have been returned. After the lapse of eight years of non-user it ceases to exist as such, and is to be acquired in the same manner as rights of way are obtained in the first instance. We have, then, the foregoing decisions only bearing on the construction of the statutes; the point receiving no consideration in the first, and that said in the last being *dicta*. In the face of statutes in such explicit language, they ought not to be allowed to force an erroneous interpretation of the clear intention of the lawmakers.

But it is urged that a rule of property is involved. To this we answer that if it can be said that these decisions permit an individual or company to seize an easement from land belonging absolutely to another, without compensation to any one, then, even if a rule of property, it cannot be too quickly set aside. It is, however, exceedingly doubtful whether any rule of property is disturbed. Again, it is thought they construe statutes, and, as there have been several sessions of the general assembly since, that construction has been accepted by the legislature. But the courts owe some duty to the co-ordinate branch of the government, and of great importance is that of giving effect to the statutes as written and according to the meaning clearly intended. These sections are explicit, and their purport not to be doubted. It would be difficult for the legislature to make them plainer. When a palpable mistake has been made, through passing on a question not argued and overlooking a portion of the statute involved, and again in discussing a question not in the case, we think it not only the duty, but that it should be the pleasure as well, of the court to rectify the error and give expression to the law as written and as intended. Such a course is much to be preferred to reading into the statute conditions

never thought of, merely to uphold what has been said inadvisedly. In such a case, this court, in all fairness, and not the legislature, should deem itself called upon to act.

The judgment of the district court was right, and it is AFFIRMED.

MCCLAIN, J., (concurring).—In construing the statutory provisions involved in this case, and in determining the force to be given to language used by this court in disposing of cases in which similar statutes of this state have been construed, it is important to notice in chronological order all the provisions found in the statutes relating to nonuser, abandonment, and reversion of rights of way acquired by railroads:

Chapter 46 of the Code of 1851 relates to condemnation of right of way, by any corporation or person designing "to construct a canal or a railroad, or a turnpike, graded, macademized or plank road, or a bridge, as a work of public utility, although for private profit," and contains this provision: "Sec. 776. If the contemplated work be not commenced within one year after obtaining land under these provisions, or if, after being commenced, it cease for two years to be prosecuted, or if, after being completed, it ceases for two years to be used for its original purpose, the former owner may file his petition in the district court to have the land restored to him upon his refunding the purchase money without interest."

In the Revision of. 1860 this chapter is retained as chapter 55, the section above quoted being section 1295; and no further provisions on the subject of non-user are found in that compilation.

In 1870 a statute was enacted (Acts Thirteenth General Assembly, chapter 91) relating to "right of way over abandoned railroad lines," which need not be set out at length, but may be sufficiently stated in substance as providing (section 1) that, in case a railroad constructed in whole or

in part under the laws of the state "has ceased to be operated or used for more than ten years, or in any case where the construction of a railroad has been commenced by any corporation or person within the state and work on the same has ceased for more than ten years and such railroad remains unfinished through the negligence of the corporation or person who undertook to construct the same, it shall be deemed and taken that the corporation or person thus in default has abandoned and surrendered all right and privilege to control over so much of the line of their road as remains unused or unfinished as aforesaid;" and in such case (section 2) "it shall be lawful for any other corporation or person to enter upon such abandoned work, or any part thereof, and to acquire the right of way over the same and the right to any unfinished work or grading found thereon and the title thereto by proceeding in the manner provided by law [in chapter 55 of the Revision of 1860], provided that parties who have previously received conpensation in any form for the right of way on the line of such abandoned roadbed, the consideration of which has not been refunded to [by ( ?)] them, shall not be permitted to recover the second time, but the value of such roadbed and right of way, excluding the work done thereon, when taken for a new company, shall be assessed to the former company or its legal representative." It is evident that the proviso of this act as to parties who have received compensation which has not been refunded by them relates to landowners who have not proceeded under Revision of 1860, section 1295 (Code, 1851, section 776), to have the land restored to them "on refunding the purchase money," and, further, that the act of 1870 relates to a wholly distinct matter, not comtemplated by the section of the Revision.

In the Code of 1873 the provisions of the act of 1870 were retained substantially unchanged as sections 1260 and 1261; but section 1295 of the Revision of 1860 was omitted

entirely, and the significance of the phrase "on refunding the purchase money" was thus totally lost sight of.

In 1874 (Acts Fifteenth General Assembly, chapter 65) section 1260 of the Code of 1873 was amended, without other substantial change, by substituting five years for ten; and in 1880 (Acts Eighteenth General Assembly, chapter 15) the same section, as amended, was repealed, and a substitute enacted, which was incorporated into Miller's Code of 1886 as section 1260, and into McClain's Code of 1888 as section 1928. Without settng out this substitute in full, it is enough to say that it consists of two distinct parts,—the first an amplification of section 1260 of the Code of 1873 (Acts Thirteenth General Assembly, chapter 91, section 1), as modified by Acts Eighteenth General Assembly, chapter 15, substituting five years for ten, which related to the appropriation by another corporation of an abandoned right of way; and the second a wholly new enactment, added by way of proviso, relating to the reversion of the right of way (and roadbed, if any), after a nonuser of eight years, to the owner of the land from which the right of way had originally been taken.

During these successive modifications of section 1260 of the Code of 1873, section 1261 of that Code (Acts Thirteenth General Assembly, chapter 91, section 2), which contained the provision as to parties who had previously received compensation in any form for the right of way which had not been refunded by them, remained unchanged and was retained in its identical language as section 1261 of Miller's Code and section 1929 of McClain's Code. It is plain, therefore, that until the adoption of the present Code (1897), which is the first official codification of the laws of the state since 1873, the provision as to parties who had previously received compensation which they had not refunded related to appropriation by one corporation of a right of way abandoned by another corporation, and

not to the reversion of a right of way to the landowner after non-user for eight years. It is also plain that the same construction is to be given in this respect to sections 2015 and 2016; for there is no such change of language as to indicate an intention to change the construction. The distinction between abandonment for five years and reversion after eight years is clearly preserved in section 2015, and it is only in that part of the section which describes an abandonment of the right of way that reference is made to section 2016, in which there is a provision for appropriation by another corporation of such abandoned right of way on making compensation for the benefit of the former company. It may be difficult to determine what construction should now be given to the clause of section 2016 which contemplates refunding by the landowner of the purchase money received by him for right of way. As already pointed out, this clause was apparently retained in section 1261 of Code of 1873 and McClain's Code, section 1929, by oversight and without any definite meaning. This suggestion may explain the divergent views expressed in the majority and minority views in this case with reference to what was decided in *Dubuque & Dak. Ry. Co. v. Diehl,* 64 Iowa, 635, and *Chicago, M. & St. P. Ry. Co. v. Bean,* 69 Iowa, 257, both decided between the enactment of Acts Eighteenth General Assembly, chapter 15, and the adoption of the present Code. *Noll v. Railroad Co.,* 32 Iowa, 66, was decided before the enactment of that statute which introduced the provision as to reversion after eight years. In the *Diehl Case* the landowner, who intervened in a proceeding in which one corporation sought to establish its right to money paid into the hands of the sheriff by another, which had attempted to condemn a right of way as abandoned, and who claimed to be the owner of the right of way by reversion, was rather summarily turned out of court because he had not repaid the compensation originally received by him for the right of way. The judge writing the opinion does not explain to

whom he should have repaid the compensation received, nor how he should have proceeded if a proffered repayment had been refused; nor is any reference made to the fact that the provision of the Revision of 1860 which pointed out just how he should proceed, and which was in force when the clause relating to repayment was first incorporated into the law by Acts Thirteenth General Assembly, chapter 91, had been subsequently repealed by failure to incorporate it into the Code of 1873. The whole matter is dismissed with the suggestion that it has not been pressed in argument. In the *Bean Case* the provisions as to reverter and return of compensation paid are run together, as though portions of one statute, which they were not until incorporated into the present Code. Prior to the present Code, they were not only in separate sections, as they still are, but in separate statutes, separated by many years in point of time of enactment.

It may be that, in view of the incorporation of this clause into the present Code, some meaning must be found for it, and some construction given to it in connection with the provision as to appropriation by one corporation of a right of way abandoned by another by non-user for five years; but it is plain, not only by reference to the diverse origin of the two provisions, but also by the very language of the two sections of the Code in relation to the subject, that the clause has no reference whatever to reversion. I would therefore favor a holding that after eight years' non-user such as described in the latter part of Code, section 2015, the right of way, including the abandoned roadbed, reverts absolutely and unconditionally to the owner of the land from which it was originally taken, and can be again condemned for right of way only as his property, and without regard to repayment by him of any compensation which he may have received therefor on the previous condemnation for railroad right of way; and I think that previous cases, so far as they seem to reach a different result on the question, should be overruled. I therefore agree with the majority

that the decision of the lower court in this case should be
AFFIRMED.

DEEMER, J., (dissenting).—It is always an unpleasant
duty to dissent from the deliberate conclusions of the ma-
jority of my brethren, and particularly so when that dis-
sent is on what is ordinarily a very plain proposition, to-wit,
the construction of our previous decisions. I would not raise
a protest, were it not for the fact that in my judgment
previous cases are misconstrued and overruled, and a hold-
ing made which in effect destroys a rule of property that
has existed for more than 17 years. Moreover, the question
involved is the construction of a statute which has been on
our books for more than 20 years,—a statute which was
construed by this court in the year 1884, and which con-
struction has not been challenged by the legislature or by
the courts, until the case at bar came before us. If, there-
fore, I am able to demonstrate that this statute was con-
strued according to my contention in the year 1884, we
find that not only have eight separate general assemblies
said that this construction was a proper one, but a code
commission composed of able and experienced lawyers came
to the same conclusion, and recommended the retention of
the law without change, knowing of the construction that
had been placed upon it. These are to my mind conclu-
sive reasons for not overruling prior decisions. There
are others which I will hereafter notice. Without stating
the proposition involved, I go at once to the main question,
which is: Have we heretofore decided it? If so, that
decision should, in my judgment be adhered to.

The question first arose in *Dubuque & Dak. Co. v.
Diehl.* Hathaway, the landowner, intervened in the action,
claiming that the title had reverted to him because of failure
of the railroad company to resume work on the right of way
within eight years. To this an answer was filed, showing
that the work of constructing the road was abandoned in the

year 1872, and not resumed for more than eight years.
The answer also pleaded that the landowner received com-
pensation in the year 1872, and had not refunded the amount
received.    The   landowner   demurred    to   the   answer.
In   speaking   to   the   point   made   by   this   demurrer,
the court said:  "We will decline to consider these points
of contention between the parties, for the reason that an-
other matter pleaded in plaintiff's answer to the petition
of intervention is decisive of the case.   It is this:   Plain-
tiff alleges that the intervener or his grantor received com-
pensation in 1872 for the right of way which has not been
refunded.    Chapter 91, section 2, Acts Thirteenth General
Assembly, provides that in the case of abandoned railroads,
a new company may acquire the abandoned right of way
by condemnation under the statute, but that a landowner,
who has previously received compensation, which has not
not been refunded by him, shall not recover the second
time," "but the value of the roadbed and right of way, ex-
cluding all the work done thereon, shall be assessed to the
former company, or its legal representative.    See Code
1873, section 1261.    The answer of the plaintiff to the in-
tervener's petition brings the case within these provisions,
and states facts which defeat recovery by the intervener.
It is shown that compensation was paid in 1872, which has
not been refunded.    Of course, payment to the grantor of
plaintiff would defeat his recovery..  The point involving the
question of the abandonment of the right of way need not
be considered, in the view we take of the case, for the reason
that, if it be conceded that there was an abandonment
in comtemplation of law, the intervener cannot recover the
money paid upon the assessment of damages for the appro-
priation of the right of way, because of the prior assessment
and payment, which has not been refunded."   There can
be no doubt from the face of the opinion that the question
now before us for decision was involved, and squarely de-
cided; but, if there be any doubt, it is entirely dissipated

when we go to the original record in the case. It was there
conceded that the particular part of the road in question
had been abandoned for more than eight years, and appellee
in his argument at pages 2 and 4, contended that title had
absolutely reverted under chapter 15, Acts Eighteenth Gen-
eral Assembly. Appellant's counsel met this by saying
that the act of the general assembly could not apply to
the case for the reason that, if so considered, it would be un-
constitutional, because interfering with vested rights. Re-
sponding to their arguments, the court refused to consider
the constitutional question and after referring to the con-
tentions of counsel and the pertinent acts of the general as-
sembly, used the language quoted. Judge Beck, in writing
the opinion, referred to the arguments of counsel in this
language: "While this defense is pleaded by plaintiff, it
is not pressed by counsel in argument, being barely referred
to by them. In view of the fact that counsel present the
case for decision upon the points involving the constitutional
question of the applicability of the present statute thereto,
and the actual abandonment of the railroad in contempla-
tion of the statute, we cannot regard the point upon which
we base our decisions as waived for these reasons. We will
not decide a constitutional question, unless it be necessarily
involved in a case which cannot be disposed of without the
decision of such question. If the record shows other ques-
tions which are decisive of the case, they alone will be con-
sidered. Courts are slow in approaching, and hesitate to
decide, constitutional questions. If it appears that the rights
of the parties are determined by rules of law plainly appli-
cable to the facts disclosed by the record, the courts will not
permit them unnecessarily to call in question the validity
or effect of a statute. Parties, by waiving other questions,
cannot form an agreed case upon which the courts will de-
cide constitutional questions. Paragraph 5 of the opinion
is a specific answer to the landowner's argument that title
had reverted to him." Can there be any doubt of what

the case really decides? The point herein involved was squarely decided, and the court expressly refused to pass upon the contention made by defendant and intervener quoted in the majority opinion. If it was given no attention, as my brothers say, I ask what the questions was which was decided. The expression of the court is not vague and indefinite, but stated in the terse and clear language of which Judge Beck was master. He expressly says that he declined to consider the points of contention made by the defendant and intervener because of the construction he was forced to put upon the statute. The case is in no respect weakened by reason of this fact, for it frequently happens that courts decide cases on points not argued by counsel, but which seem to them to be controlling. Such decisions have never before to my knowledge been doubted, simply because of this fact. If such is to be the rule, I fear that many cases written by the present bench may be shown to be of no value as precedents, because of this very fact.

The next case in which the matter was considered is *Chicago, M. & St. P. R. Co. v. Bean,* 69 Iowa, 257. There the land was condemned in 1870, but nothing was done toward constructing the road until May or June of the year 1878. It is true that the opinion does not show just what time in the year 1870 the condemnation was had; but that is immaterial, in view of what follows, as I shall attempt to show. In deciding the case the court said: "It is claimed by counsel for appellant that the right of way was forfeited by non-user for eight years, as provided in section 1260, 1261, Miller's Code." What does the court say in answer to this claim? Does it say that it did not appear that the full eight years had expired, as stated by the majority? Does it say that chapter 15 of the Acts of the Eighteenth General Assembly, referred to by the majority as section 651, did not apply? No; none of these things. But it proceeded to quote the statute and to dispose of the case in the following language: "It is claimed by counsel for appellant that

the right of way was forfeited by non-user for eight years as provided, in sections 1260, 1261, Miller's Code.   These sections provide that, if a railroad right of way shall not be used or operated for a period of eight years, the land, and the title thereto, shall revert-to the owner of the tract from which it was taken, but that 'parties who have previously received compensation in any form, which has not been refunded by them, shall not be permitted to recover the second time.' "    After then showing that the Agricultural College, the owner of the land, had received compensation through condemnation proceedings, and that this compensation had not been refunded, it proceeded as follows: "Under these circumstances we think that it should be held that the defendant has no right to be paid for the right of way, because the damages have not been refunded to the railroad company as required by law.   The plain provision of the statute is that, nothwithstanding there has been an abandonment of the line, the landowner shall not be entitled to be paid twice for the right of way."   Is there any doubt about what was actually decided in this case?   We are endeavoring to discover what was in fact decided,—not what might have been considered, but what was actually determined, by the court.   A case is authority only for what it actually decides.    That the court was justified in treating the case as if the full eight years had expired is plainly evident, when we go to the arguments of counsel; for it is conceded in all the briefs in the case that the full eight years had expired.    The majority say the court should not have considered the Acts of the Eighteenth General Assembly.    With that question I have no concern, and it is entirely immaterial to our present inquiry.    We are endeavoring to find out what the court in fact decided, not what it should have considered.    A stranger unfamiliar with our statutes would have no difficulty, I think, in determining what the court decided in this case; and it will not do to say that the case is not all authority, because the court had no

right to construe the statute as in force. It did consider it, and gave it a construction. The only question for us is, what was in fact decided? I am doubtful of the propriety of going to arguments of counsel to determine what the court should have considered. I have done so only to show that the court in these two cases was right in its assumption of facts, and that the exact propositions decided were in fact considered by the court. I do it to sustain the decisions, not to overthrow them. The majority are forced to go to something outside the opinions themselves to find any sort of consolation for their views, and I am quite convinced that it is unfair to so treat any opinion. The opinion does and should speak for itself, and I have resorted to the arguments simply to emphasize what to my mind is perfectly clear. I think the majority pervert the language of Judge Rothrock, and make it mean something he did not intend to say.

. But this is not all. In *Noll v. Railroad Co.,* 32 Iowa, 66, chapter 91 of the Laws of 1870, quoted by my Brother McClain in his concurring opinion, was before this court for construction, and it was there expressly held that, notwithstanding an abandonment for more than ten years, a landowner who had once been paid for his land, who had not made a refund, could not recover a second time. As I will have occasion to refer to this case again, I quote from it as follows: "The case shows that the land in question was condemned according to law for the Dubuque & Pacific Railroad, and full compensation therefor made to the plaintiff, more than ten years prior to the commencement of the present proceeding. The corporation thus condemning and paying for the right of way acquired an easement in the land thus condemned. In the theory of the law an easement thus acquired is so acquired to the public use. Upon no other theory can the power of eminent domain be exercised; it being well settled that the legislature has no power to take the property of a citizen for any but a public use. The

power to take private property for public use is one of the
sovereign powers of the state. It is a necessary attribute of
sovereignty in the state, rather than any reserved right in
the grant of property to the citizen. It can, however, be
exercised under our constitution only for public uses, and
then only upon making just compensation. In contempla-
tion of law, therefore, when the right of way in question
was taken through plaintiff's lands, it was taken by the state
for public use, and not simply by and for the use of the rail-
road company in whose behalf it was taken, although the
compensation for the property taken was paid by the rail-
road company. The easement thus acquired by the rail-
road company is in the nature of a grant from the state for
the uses and purposes fixed by law, and it is entirely compe-
tent for the legislature, when the railroad company fails to
carry out the object and purpose of the grant by failing to
construct and operate their railroad, to transfer their ease-
ment to another company upon compensation being made to
the former company. It is simply the exercise of the power
of eminent domain. This was the object and it is the effect
of the act of 1870 before set out." It will be noticed that
this decision was made after the change in the law
suggested by Justice McClain. I have not looked back to
see whether or not Justice Miller was justified in construing
this law. It may be, as suggested by the majority in the ref-
erence to the *Bean Case,* that the court should not have
considered the question. With this proposition I have no
concern. It is enough for me in either case when I find
the court did in fact consider and construe the statute. If
the rule of the majority is to obtain, one is never safe in cit-
ing a case construing a statute, even when the statute is
copied in the opinion, without going back to the statute law,
to see whether or not the court should have construed it.
I do not think the majority will in the future take this bur-
den upon themselves. If the court treats a statute as in
force, and construes it, its determination is a precedent, even

though it may afterwards be discovered to be a debatable proposition as to whether or not the particular statute was applicable to the case. In any event, it is no less a binding precedent on the construction of the statute. Neither the *Bean* nor the *Diehl Case* decided anything, unless it was the construction of the statutes before us. If it did, I wish the majority would point it out. Both cases squarely and unequivocally construed the very statutes in controversy, and, instead of referring to them by number, set them out in *haec verba*. It is also true that the statute construed in the *Noll Case* did not contain the magic name "revert;" but that to my mind is wholly immaterial, for there can be no question in the mind of any lawyer that in case of abandonment under the laws of 1870 the land did revert to the owner. When the railroad company "abandoned and surrendered all right and privilege to control the line," it reverted to the owner; for there was no other place for it to go. Without reference to any statute, it is perfectly clear that, when an easement is abandoned, the title, in the absence of statutory provision, reverts to the original owner. Noll thought this was the case, and this court evidently agreed with him. A careful reading of that case will show that there is no foundation for the attempted distinction made by my Brother McClain.

What have the majority to say of these cases which stand in the way of an affirmance of this judgment? After a labored, and to my mind fruitless, attempt to show that Judge Beck did not decide anything in the *Diehl Case,* or that, if he did, the point was given no attention, and that Judge Rothrock did not know what he was doing in the *Bean Case,* and with a mere glance at the *Noll Case,* with the remark that the word "revert" was not used, they, apparently doubtful of their conclusions, fall back on a quotation from the *Washburn-Halligan Case* and some general reflections regarding the duties of courts in construing statutes, which have no application whatever, unless in justifica-

tion of an opinion overruling previous cases. Evidently this is for the purpose of fortifying themselves in the event it is found that their views regarding the effect of these previous decisions do not meet with approval. Why this timidity is left only to surmise. Realizing the difficu'ties standing in the way of an affirmance of this case, Justice McClain very frankly and boldly votes to overrule at least two of our previous decisions, although the third seems to have escaped his notice, and to eliminate from section 2016 the words, "but parties who have previously received compensation in any form for the right of way on the line of such abandoned railway, which has not been refunded by them, shall not be permitted to recover the second time." While admiring his frankness, I cannot agree to any such departure from well established rules. We owe it to ourselves and to the profession to squarely overrule these cases, if the majority opinion is to prevail, and I regret the attempt to explain and distinguish, when there is no difference; and I especially regret to see a "plain proposition" as it appeared to Judge Rothrock converted by mere lapse of time into a "palpable absurdity." It is strange that it did not occur to Judge Beck, to Judge Rothrock, who wrote the *Bean Case,* or to Judge Miller, who wrote the *Noll Case,* or to any of their associates, that an abandoned right of way was no right of way. I confess that I am a little skeptical on this proposition. I do not know how you can otherwise describe a right of way which has been abandoned than by calling it an abandoned right of way. There are many other things discovered by the majority which I can hardly believe escaped the attention of these learned judges. There is not a case cited by the majority which gives the least support to the conclusion reached. *Brown v. Young,* 69 Iowa, 625, simply decides that a right of way easement conveyed by deed is not a breach of covenant of warranty as to title.

*Smith v. Hall,* 103 Iowa, 96, has no bearing on the question now before us. The point was not mentioned or considered in the opinion, nor was it referred to in argument.

There are, then, two cases, and I think three, which must be overruled, if this case is to be affirmed. We are, then, face to face with this proposition: Should these cases be overruled? I think not, and as briefly as I may will' state the grounds for my conclusion: First, because they establish a rule of property, and should not be overruled without some imperious necessity, or to prevent some great mischief. *McGahen v. Carr,* 6 Iowa, 331; *Tuttle v. Griffin,* 64 Iowa, 455. Second, because they construe a statute, and the construction adopted has been approved and accepted by at least eight separate general assemblies as a proper interpretation of the acts. The legislature, which theoretically, at least, alone has power to make and unmake law, has accepted our construction as an expression of its intent; and we, who are here simply to construe, should not vacillate in our construction, when that construction has once been given and approved and accepted by the lawmaking power. Third, because of the rule of *stare decisis,* which is one of the most sacred in the law. As said by this court, it is more important that a rule should be fixed and stable than that it should be strictly just. *Clark v. Hyman,* 55 Iowa, 14. I call special attention to the apt quotation in that case from Ram's Legal Judgments. Were it not for the length of this dissent, I would quote from Judge Black's extremely forceful statement of the rule of *stare decisis,* found in *Hole v. Rittenhouse,* 2 Phila. 417. He tersely says, in substance, that if each new set of judges consider themselves at liberty to overthrow the doctrines of their predecessors, our system of jurisprudence, if system it might be called, would be the most fickle, uncertain, and vicious the civilized world has ever seen; that rules of property, which should be as steadfast as the hills, would, but for the rule of *stare decisis,* become as unstable as the waves;

that, if any man be offered the title which the supreme court has decided good, let him not buy if the judges who made the decisions are dead; and that, if they are living, he should get an insurance on their lives, for no one knows what an hour or a day may bring forth.

Let us see if there is any great and imperious necessity for overruling these cases,—any reason why we should assume superior knowledge in the construction of a statute to that possessed by our learned predecessors. The statute in question was passed in order to settle disputes as to when the right of way of a railway company should be considered abandoned. Without that statute a right of way acquired by condemnation, and not by grant, could be lost by abandonment; but the law did not undertake to fix a definite time, and the whole matter was left to the determination of a jury. Jones, Easements, sections 849, 852, and numerous cases cited. By the statute in question the legislature undertook to treat of the question of abandonment, to fix various periods as applicable to different interests, and to impose conditions on parties who sought to take advantage of the abandonment. The statute treats of the effect of abandonment, and says, in effect, that after five years' non-use or abandonment any other corporation may enter upon and acquire the right of way; after eight years' non-user or abandonment by the corporation first acquiring it, the right of way reverts to the landowner. If this were all, there would be much force in the majority opinion. But it is not; for section 2016, under which appellant acted in this case, relating to condemning abandoned rights of way, imposes conditions and limitations on the rights of both the landowner and of the other corporation which may seek to take advantage of the abandonment. It will be noticed that the first section treats of abandonment or non-user, and deals with two periods of time,—one from five to eight years, and the other eight years and after,—and states the effect to be given such abandonment. The

section as to taking the abandoned right of way clearly has reference to both periods of time, for it makes no express distinction between them.    At any rate, defendant proceeded under this statute, and is seeking to condemn in accordance therewith.    Plaintiff is not resisting the right to condemn the abandoned right of way, but wishes to be relieved of the conditions imposed by section 2016.

Notice the section starts by saying: "In case of abandonment, as provided in the preceding section." What does this mean,—abandoned for five years, or for eight years, or both? Manifestly both; for both are referred to in the preceding section. Now, what follows? The corporation shall proceed to condemn under the statute for taking private property for public use. But who shall receive the award? If the eight years have not elapsed, the former company or its legal representatives shall receive it. And why? Because the owner has no interest in it, and has nothing to say. As said in the *Noll Case,* the easement having been acquired for public purposes, the legislature may transfer the easement to another company, upon compensation being made the former company. But, suppose the right of way has been abandoned for more than eight years; who gets the compensation awarded on the second condemnation? If the case stood alone on section 2015, the landowner would be entitled to it unconditionally; but section 2016, under which defendant was proceeding, provides that parties who have previously received compensation in any form for the right of way on the line of such abandoned railroad, which has not been refunded by them, shall not be permitted to recover a second time. This manifestly refers to the landowner; for he is the only party who could have received compensation "before" for the right of way. It cannot refer to the first company; for there is no method whereby it may receive compensation for the right of way. It has paid out the compensation to the landowner, not received it. If the first company has sold out to a second,

it has received the purchase price for its improvements, etc.;
and its successor, or its legal representative, are entitled
to compensation, provided the condemnation is had after
five years and before eight. After eight years the compen-
sation goes to the landowner, provided he has refunded the
compensation first received by him, but not otherwise. This
is the fair and reasonable construction of these statutes, and
is the only way of harmonizing the doubtful provisions. It
surely does not mean that the owner is expected to refund,
before the expiration of eight years; for at any time within
five and eight years a second company may enter upon, and
take the land by paying the first company, not compensa-
tion for the land, but the value of the roadbed and right of
way, excluding the work done thereon. Before the expira-
tion of the eight years the owner has no right to compensa-
tion, when the land is taken by a second company. After the
expiration of eight years, the first company has nothing to
say in recondemnation proceedings; but the owner of the
land is not entitled to be again paid for his land unless he
has refunded what he originally received. As said in the
*Fernow v. Chicago, M. & St. P. Ry. Co.* 75 Iowa, 526.
"As we understand the statute, it defines what shall be
regarded as an abandonment of a right of way. It defi-
nitely fixes the rights of the parties, and under its provisions
nothing less than non-user for eight years will authorize
the owner of the land from which it was taken to take posses-
sion of the land; and any time within the eight years the com-
pany owning the right of way has the right to take up
the use for which the right of way was granted." Surely
no refund by the owner is contemplated until he has the
right of re-entry, and that does not exist until the expira-
tion of eight years. Before that time his entry on the right
of way would be a trespass. If the matter of refund does
not apply to the landowner, I do not know to whom it does
apply. Surely not to the first company; for, we have seen,
it has received no compensation for the right of way, and

after eight years it has no interest therein. The landowner has no interest in the right of way under these statutes until an abandonment by the railroad company for a period of .eight years. The first company could re-enter at any time before eight years, without paying a dollar of compensation to any one. The whole thought of the law is that the landowner shall not be twice paid for his land. This is reasonable, because he has had the use of his money from the time of the first condemnation, and afterwards gets back his land, which he is entitled to hold against all the world, save as to another corporation, engaged in public service, that may wish to take it again for public uses. If the landowner, after the expiration of the eight years, which is the only time he can refund, under the doctrine of the *Fernow Case,* has made a refund of the compensation received and taken absolute title to his land, he is then entitled to compensation on the recondemnation. This is equitable and just, and, I think, the only fair construction the statutes will bear.

The majority seem to hang on the word "revert." I agree that it is a technical word, and that the definition given is correct; but I do not agree that it was used in a strictly technical sense by the legislature,. and certainly the legislature may in its wisdom provide conditions under which the reversion shall take place, and the effect thereof after it has taken place. The legislature, it is true, says the land shall revert to the owner; but it is on condition that, if again wanted for public purposes, a corporation entitled to excercise the right of eminent domain for railway purposes may take it under section 2016, but, when so taken, the landowner cannot again recover compensation unless he has refunded the compensation originally received. No stranger may appropriate the land, except for the purpose for which the right of way was originally taken, and then it must be done under due forms of law. As against all the world, except a second company engaged in the same

business, the landowner's title is good; and it is good as
to that company until it acquires the right thereto under
section 2016 of the Code.   The fancied dangers feared
by the majority are not very serious, as it seems to me,
in view of this plain construction of the statute.   Surely
not so serious as to justify us in overruling cases that have
stood undisturbed for more than 17 years.   Knowing the
law, if the landowner wishes to erect valuable improvements
on an abandoned right of way, he may easily make the
refund contemplated by statute; and as a general rule .in
view of the advance in land values, he will be able to re-
purchase his land, for which he has been fully com-
pensated, at a very small percentage of its real value.   The
distinction made in the opinion between "abandonment"
and "reversion" I do not exactly understand.   When land
is abandoned, it reverts to the original owner.   Reversion is
simply one of the effects of abandonment.   Section 2015
refers to non-user or abandonment, and states the effects
that flow from it.   Whether the period be five or eight years,
it is nevertheless abandonment.   The effect of such abandon-
ment is to be found in that and the subsequent section. · I
do not see how abandonment and reversion are to be treated
as distinct from each other, when used as in the statutes
referred to.   To permit a second company to take lands
already devoted to public use, and for which compensation
has been paid, without requiring a second payment is clear-
ly within the power of the legislature.   *Noll v. Railroad Co.,*
*supra.*   Indeed, I have never known this proposition to
be questioned.   Of course, if the owner has returned the
compensation originally awarded, a different question would
arise.   To the suggestion of the majority that the landowner
may never be able to acquire absolute title, there is a very
ready answer.   He may easily refund the compensation
awarded him after the expiration of eight years, and thus
free the land of the right of a subsequent company to re-
sume the use thereof for the purpose intended, and for

which he has received full compensation. If the majority would suggest any person to whom the clause relating to refund could apply, except the landowner, I should not be writing this dissent. But they do not, and cannot do so. Appreciating the difficulty, Justice McClain courageously proposes to read out of the statute the entire clause relating to refund. This, of course, is the only conclusion that can logically be reached, if the judgment is to be affirmed, although it evidently did not occur to him when acting as one of the members of the code commission. But I do not think we are justified in reading out whole clauses of a statute. This is not our function. Our duty is to construe, not to repeal. If this were not true, the legislature now in session might as well adjourn; for we by so-called construction may write out of a statute any clause we see fit.

If the question before us were one of substantive law, I should not be so determined in my opposition to the opinion. That it is not clear; and, as said by the majority, "the object of construction is to ascertain the meaning and intention of the legislature as exemplified in the statutes under consideration." In doing this, however, we are not justified in assuming that the legislature wasted space and effort in writing into a law a clause which it knew had no meaning. It is a very extreme case indeed, when we are justified in entirely obliterating a clause in a statute. We must assume that it was placed there for some purpose, and so construe a law as to give effect to all the language used. That is not difficult in this particular case, and I seriously object to repealing the clause with reference to a refund by the owner. Justice McClain clearly shows in his concurring opinion that the clause he and the majority would read out of the statute has reference solely to the landowner; and in at least two cases we have held, not only that this clause was a part of the law, but gave it a construction which has passed unchallenged either by the court or by the legislature for more than 17 years. The difficulties sug-

gested by Justice McClain did not seem to trouble Judge
Beck, or Judge Rothrock, or Judge Miller. Each of these
judges thought every provision of the law could stand and
be made harmonious. It remains for us in this case to
create the doubt. When a statute has been construed by
the court in accordance with the assumed legislative intent,
and that construction has been approved by at least eight
consecutive legislative assemblies, it may well be assumed
that we have found that legislative intent else the legislature
would have changed the language of the act. Certainly it is
as easy for it to eliminate the provision relating to a refund
by an express repeal, as it is for us to read the clause out of
the statute by judicial construction, and to my mind, such a
course is much more seemly. It is important, I think, to keep
the functions of the different departments of government well
preserved and sharply defined; and for one I do not wish
to be put in the position of a legislator, and of assuming
functions belonging to the legislative department.

Something is said about the inequality of the statute,
viewed in the light of its former construction by this court.
I do not see the force of this suggestion, and think it is
fully answered by what is said in the *Noll Case, supra.*
As well might a grantor, who has received full and ade-
quate compensation for his land, ask it back because his
grantee gave it to another without consideration. Surely
there is nothing inequitable in saying that a landowner
shall not be twice paid for his land. Moreover, in this case
the landowner not only received compensation for the land
actually taken, but full pay for all damages suffered by
him on account of the perpetual use of the strip so taken
for railway purposes for all time in the future. A perti-
nent inquiry in this connection is, how many times may a
landowner recover compensation for a right of way over his
land? The majority say as many as eight years will go
into eternity. In view of the statute quoted, I do not think
this was the intent of the legislature; and I think it has said
in as strong terms as it could that this was not its intent.

If there is any other construction to be put on its inaction, in view of our former decisions, than the one I have given, my brothers have failed to point it out. I am not reading anything into the statute, but doing my best to prevent the majority from reading something out of it. After a labored attempt to construe the statutes in harmony with their contention, the majority fall back on the supposed inequalities thereof, and, while not so bold as Justice McClain, I think it clearly appears that they arrive at the same result as he does and that they read out of the statute the provisions with reference to a refund. The code commissioners appointed to report the Code of 1873 expressly say that they did not change the existing law on this subject as declared in the *Noll Case,* and the commission appointed to report the Code of 1897 say the same thing in substance. That the latter commission was familiar with our previous decisions is not left to inference, because the annotations to that Code refer to the decisions on which this dissent is founded, and correctly state what is held in the *Bean* and *Diehl Cases.* Are we justified, in view of these facts, in overruling these previous decisions? I think not. The most that may be said is that these statutes are susceptible of two constructions. If there were any doubt about this, it is dispelled by our present situation, without reference to prior cases. The majority give them one construction, and the minority another, and Justice McClain another, based, not on a reading of the statutes themselves, but on the history of the enactments. He goes further than any of us, however, although I think his conclusion must be accepted by the majority, and unhesitatingly repeals a definite clause found in section 2016 of the Code. The majority say my construction was never thought of by the legislature. Justice McClain, in his dissent, clearly demonstrates that that was its intent down to a certain time; but he concludes that in changing the law the legislature did not take enough out and therefore he would repeal the rest. I am opposed to such an arbitrary exercise of power.

It is said our former decisions discuss questions not in the cases. I do not agree to this, and have heretofore attempted to demostrate the error in the proposition. If the rule of the majority is to stand as authoritive, no one will ever be justified in treating a case, which sets out a statute and gives it a construction, as decisive of anything, without first looking through the statutes of the particular state to see whether or not the court should have considered the question. This is certainly a novel rule, and one which will entail a vast amount of work, not only on this court, but upon the profession at large. It is enough for me that a court does consider and interpret a statute. There is no doubt, I think, that in each and all of the cases relied upon by me the statutes are set out and a construction given them. That the court should not have considered them is of no concern, for in each case the decision is made to turn on the construction of these statutes. When a court says a statute is involved, and proceeds to construe it, the construction given is binding; for in effect the court says that it is involved and applicable to the case. If the cases on which I rely do not construe these statute, and if this construction was not the sole ground of the decisions, I ask my brothers to point out what was decided, and how the conclusion arrived at could have been reached in any other manner.

I have given this case more than ordinary attention, because a rehearing was granted on the theory that the original opinion was erroneous in saying that the questions had theretofore been decided. From this examination I am led to conclude that the result reached in the original opinion was correct, that we correctly interpreted previous decisions, and are not justified in overruling them at this time. For these reasons, I would reverse; and this I would do, were there no other ground than the rule of *stare decisis*.

SHERWIN, J., concurs in this dissent.