THE DUBUQUE & DAKOTA R'Y CO. v. DIEHL, SHERIFF, AND HATHWAY, INTERVENOR.

1. **Railroads:** RIGHT OF WAY: ABANDONMENT OF: CONDEMNATION BY NEW COMPANY: WHO ENTITLED TO COMPENSATION: STATUTE. Where a railroad company has acquired and paid for right of way, but has abandoned it, a second company may acquire it by condemnation, but, unless the land owner has refunded the compensation received by him from the first company, he is not entitled to the compensation awarded upon the condemnation by the second company, but such compensation is to be awarded to the first company, or its legal representatives. Code, § 1261.

2. **Constitutional Law:** VALIDITY OF STATUTE: HESITANCY OF COURTS TO CONSIDER: PRACTICE. Courts are slow to consider, and hesitate to decide, constitutional questions; and, where the record discloses facts decisive of a case, the courts will determine the cause upon such facts, though not pressed by counsel, rather than allow counsel to draw them unnecessarily into the consideration of the constitutionality of a statute.

*Appeal from Wright Circuit Court.*

THURSDAY, OCTOBER 23.

ACTION to recover of defendant, Diehl, money paid to him as sheriff, in proceedings had under the statute for a condem-. nation of a right of way for a railroad. Hathway intervened, claiming the money on the ground that he was the owner of the land. A demurrer to plaintiff's answer to the petition of the intervenor was sustained. From this ruling the plaintiff appeals.

*McKenzie & Hemingway,* for appellant.

*Nagle & Weber,* for appellee.

BECK, J.—I. The cause being before us for decision upon questions arising on demurrer to the answer of intervenor's petition, thus requiring determination of the sufficiency of the pleadings, they must be set out with particularity.

The petition alleges that in 1881 plaintiff, being the owner of the right of way for a railroad over certain land in Wright

county, which it had acquired by purchase from the Iowa & Pacific Railway Company, sold and transferred it to the Iowa Central & Northwestern Railway Company, in the following manner and under the following circumstances: The company last named stealthily and by force attempted to take possession of the right of way owned by plaintiff over the land in question, and other lands, and proceeded to condemn the same under the provisions of the statute, and thereupon plaintiff commenced a proceeding to enjoin them from proceeding farther in the matter. Pending the litigation, an amicable settlement was made between the parties, in which it was agreed that the Iowa Central & Northwestern Railway Company should pay plaintiff compensation agreed upon for the work done upon the railroad track, and such further sums as should be assessed by the jury in the condemnation proceedings, the whole amount thus determined to be paid to the sheriff of Wright county for the use and benefit of plaintiff. Under this agreement the right of way was condemned, and the damages assessed were paid to the defendant, Diehl, who was, at the time, sheriff. He now refuses to pay the money to the plaintiff.

The sheriff, answering the petition, admits that he received the money as alleged in the plaintiff's petition. He alleges that the right of way in question was condemned in 1870, or 1871, by the Iowa Central & Northwestern Railway Co., and in those years some work was done upon the track, but the enterprise was abandoned in 1871, and was not again resumed until 1881, and the owners of the land upon which the right of way is located now claim the money in his hands, and have made demand therefor. He avers that he is ready and willing to pay the money to the parties entitled to receive it, as determined by the decision of the court.

Hathway filed a petition of intervention, alleging that he is the owner of the land upon which the right of way in question is located; that it was condemned in 1870 or 1871, and some work was done upon the railroad track on his lands in

the year 1871, or the prior year, but none was done afterwards until the spring of 1881. He claims that the right and title to the land occupied by the right of way has reverted to him by abandonment and failure of the railroad company to resume work within eight years, and that he is therefore entitled to the money in the hands of the sheriff, paid under the last condemnation.

To the petition of the intervenor, the plaintiff answers, setting up the following facts, in addition to others alleged in the petition: The Iowa & Pacific Railway Company was organized in 1872, for the purpose of building a railroad from Sumner, in Fayette county, to Belmond, in Wright. county, and caused the track to be graded between the towns named prior to the fall of 1872, but the enterprise was prosecuted no farther until 1879, when the right of way from Sumner to Belmond was purchased by plaintiff, and the further construction of the road was at once commenced. It was built from Waverly to Hampton, a distance of forty miles, in 1879, and from Waverly to Sumner, a distance of twenty-three miles, in 1880. Preparations were made in 1880 to proceed with the construction of the road from Hampton to Belmond. It is alleged that plaintiff, after it acquired the right of way, was continually engaged, when the weather would permit, in constructing the road and laying the track until the spring of 1881, when it disposed of the right of way from Hampton to Belmond in the manner alleged in the petition. Plaintiff denies abandonment of the road, and alleges that since it acquired the right of way it has been continuously engaged in building the railroad. It alleges that the intervenor, or his grantor of the land over which the right of way in question is located, received compensation therefor in 1872, and neither has refunded the amount received.

To plaintiff's answer to the petition of intervention the defendant and intervenor demurred, upon the ground, substantially, that it shows that the work of constructing the

railroad ceased in 1872, and since that date it has not been used or operated in any manner, and that there has therefore been for more than eight years an abandonment of the right of way.

II. The questions raised by the demurrer and discussed by counsel, involve the inquiry as to the period of abandonment and non-user of a railway track or right of way which will work a forfeiture of rights acquired thereto by purchase or condemnation. The defendant and intervenor contend that abandonment for eight years in this case will work such forfeiture, while the plaintiff insists that the right will subsist for ten years after abandonment. Their positions are based upon diverse views as to the applicability of particular statutes to the facts of this case, and the constitutionality of the present statute upon the subject, when sought to be applied to a right of way acquired before its enactment, which is attempted to be drawn in by the intervenor.

It will be observed that the alleged abandonment of the railroad began in 1872, and that work in its construction was resumed in 1879, a period of about seven years intervening. between the suspension and resumption of the enterprise. The defendant and intervenor insist that, under Acts of Eighteenth General Assembly, chapter 15, (Miller's Code, § 1260,) the road would be regarded as abandoned after non-user for five years, while plaintiff maintains that this statute does not control its rights, which are to be settled and enforced under chapter 91, section 1, Acts of the Thirteenth General Assembly, (Code, § 1260,) which provides that non-user for ten years will only work a forfeiture of the right of way.

Another point of difference between the parties involves the fact of abandonment of the road in Wright county, along the line where it crosses the land in question. Defendant and the intervenor claim that, as no work was done there, while the road in 1879 and 1880 was constructed in separate divisions east of Hampton, there was an actual abandonment

of the road where it crosses the intervenor's land. The plaintiff insists that, as the work was prosecuted upon parts of the line of the road, this will save it from the operation of the statute, so that none of it will be regarded as abandoned. The question thus presented involves the considera- tion of facts which, under the statute, will be regarded· as an abandonment.

III.  We will decline to consider these points of conten- tion between the parties, for the reason that another matter pleaded in plaintiff's answer to the petition of intervention is decisive of the case. It is this: Plaintiff alleges that the intervenor or his grantor received compensation in 1872 for the right of way, which has not been refunded. Chap- ter 91, section 2, Acts of the Thirteenth General Assembly, provides that, in the case of abandoned railroads, a new company may acquire the abandoned right of way, by condemnation under the statute, but that a land owner who has previously received compensation, which has not been refunded by him, shall not recover the second time, "but the value of the road bed, and right of way, excluding the work done thereon, shall be assessed to the former company, or its legal representative." See Code, § 1261.

*J. RAIL- ROADS: right of way: aban- donment of: condemna- tion by new company: who entitled to compensa- tion: statute.*

The answer of plaintiff to the intervenor's petition brings the case within this provision, and states facts which defeat recovery by the intervenor. It is shown that compensation was paid in 1872, which has not been refunded. Of course, payment to the grantor of plaintiff would defeat his recovery.

The grantor could not, by transfer of the land, make the successive railroad companies liable for double assessments. The grantee in this case, as in all other cases wherein rights growing out of real estate are concerned, and where no ques- tion of notice arises, stands in the shoes of his grantor. The answer, therefore, considered, as it must be, with the allegation of the petition, that the last condemnation proceedings were instituted for the purpose of awarding to plaintiff the value

of the right of way which it had acquired, presents a valid defense to the intervenor's petition.

IV.   While this defense is pleaded by plaintiff, it is not pressed in argument by counsel, being barely referred to by them.   In view of the fact that counsel present

2. CONTTITU-
TIONAL law:
validity of
statute: hesi-
tancy of
courts to con-
sider: prac-
tice.

the case for decision upon the points involving the constitutional question of the applicability of the present statute thereto, and the actual abandonment of the railroad in contemplation of the statute, we cannot regard the point upon which we base our decision as waived for these reasons.   We will not decide a constitutional question unless it be necessarily involved in a case which cannot be disposed of without the decision of such question.   If the record shows other questions which are decisive of the case, they alone will be considered.   Courts are slow in approaching, and hesitate to decide, constitutional questions.   If it appears that the rights of the parties are determined by rules of law plainly applicable to the facts disclosed by the record, the courts will not permit them unnecessarily to call in question the validity or effect of a statute. Parties, by waiving other questions, cannot form an agreed case upon which the courts will decide constitutional questions.

V.   The point involving the question of the abandonment of the right of way need not be considered, in the view we take of the case, for the reason that, if it be conceded that there was an abandonment in contemplation of law, the intervenor cannot recover the money paid upon the assessment of damages for the appropriation of the right of way, because of the prior assessment and payment, which has not been refunded.

We reach the very satisfactory conclusion that the circuit court erred in sustaining the demurrer to plaintiff's answer to the petition of intervention.

REVERSED.