HENRY VANDEWATER, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**EMINENT DOMAIN:** Railways—Right of Way—Abandonment of
1, 3 Work—Reversion of Title—Return of Condemnation Money.   A railway right of way, acquired by condemnation proceedings, reverts to the owner from whose land such right of way was carved when the construction of the railway has "commenced," and such construction abandoned and not in good faith resumed for eight years (Sec. 2015, Code 1897), and the title to such right of way may be quieted in such owner, even though he has never been disturbed in his possession of the land embraced in such right of way, and even though he declines to return the money paid him on the original condemnation.

> DEEMER, C. J., and SALINGER, J., dissent.

**EMINENT DOMAIN:** Railway Right of Way—Statute of Limita-
2 tion—"Commencement of Construction."   Sec. 2015, Code 1897, providing that if the construction of a railway has "commenced" and such construction ceases and is not in good faith resumed for eight years, the right of way acquired by condemnation shall revert to the owner of the land from which such right of way was taken, becomes operative from the time construction work commences on any part of the contemplated line as a whole. Such statute does not remain inoperative as to any particular tract simply because no construction work has been actually done on that particular tract.

*Appeal from Adair District Court.*—HON. W. H. FAHEY, Judge.

TUESDAY, JUNE 22, 1915.

ACTION to quiet title to land taken in condemnation proceedings for railway right of way, the plaintiff contending that the defendant had abandoned all right to the condemned land under the provisions of Sec. 2015 of the Code of 1897. Decree for the plaintiff.   Defendant appeals.—*Affirmed.*

*H. J. Chapman, F. W. Sargent,* and *Robert J. Bannister,* for appellant.

*Musmaker & Williamson,* for appellee.

GAYNOR, J.—This is an action in equity to quiet title to a piece of land in Adair county. The plaintiff claims to be the owner of this land and alleges that the defendant com-

1, 3. EMINENT DO-
MAIN: rail-
ways: right
of way:
abandonment
of work: re-
version of
title: return
of condemna-
tion money.

pany makes some claim to it adverse to the plaintiff; that whatever interest defendant may have had in the land, its right to assert an interest is now barred by virtue of Sec. 2015 of the Code of Iowa. Plaintiff claims that he is the owner of quite a large tract of land; that in the year 1903, the defendant company caused a strip one hundred feet wide across plaintiff's farm to be condemned as a right of way for a line of railroad from Winterset to Greenfield, and that the work of constructing the road was commenced immediately after the condemnation, but was abandoned in the year 1903; that the road was never finished, used, or operated, and therefore the title of the railroad company acquired under such condemnation proceedings has been lost, and the title has reverted to the plaintiff. The defendant first assailed the petition by demurrer. This being overruled, the defendant answered, setting up that the plaintiff had never been disturbed in his possession; that the construction of the road had never been commenced over and across plaintiff's land; that, therefore, the statute of limitations had not commenced to run; that the plaintiff had been paid in full for the right of way, and never returned or offered to return the money received for it; and that there was no equity in plaintiff's claim. Upon these issues, the cause was tried to the court, a decree entered for the plaintiff, quieting title as prayed.

It appears without dispute that the defendant company acquired a right to the piece of land in controversy, through the exercise of the power of eminent domain; that the land in controversy was condemned by proper proceedings for the use of the railroad company for the building of a line of railway between Winterset and Greenfield; that the defendant paid to the plaintiff the full amount of the damages

awarded. It appears that, after the defendant's right to proceed with the building and construction of the railroad had been ascertained and determined, and the damages paid, the defendant commenced the construction of the road between Winterset and plaintiff's farm, and did work upon the road, in the way of construction, up to within about two miles of the land in controversy; that it also began the construction and building of the roadbed between Greenfield and plaintiff's land, and within about a mile of the land in controversy. Between plaintiff's farm and Winterset, there was about 10 miles of grading and work done in preparing the roadbed. There was no grading and no work done on plaintiff's land, except that in the line of the right of way extending over plaintiff's land, the defendant had put stakes marking the right of way and fixing the grades. The land in question is about one and one-half acres. The biggest part of the road between Winterset and the land in controversy has been graded within two miles of plaintiff's land. Considerable grading had been done between Greenfield and plaintiff's land, the exact amount of which does not appear, but it did not reach within a mile from plaintiff's land. In the fall of 1903, the railway company quit the construction of the road from Winterset to Greenfield, and later gathered up all their material on the right of way used for construction purposes, and hauled the same away, quit the construction of the road and never have finished or used the same for railway purposes since 1903; that no part of the contemplated railroad from Winterset to Greenfield was ever used or operated.

Defendant presents three propositions for our consideration which it claims should be answered in the affirmative, and, being so answered, work a reversal of this case: First. There can be no abandonment where there has been no commencement of construction. Second. A part of a line of road can be abandoned without affecting other parts. Third. The plaintiff has never been disturbed in his possession.

Defendant says the construction of the road never having been commenced, the eight-year period for reversion does not apply. The eight-year limitation which works a reversion does not commence to run until after the construction of the road has been commenced and then abandoned.

The first question asked by appellant is, Can there be an abandonment of right of way when nothing has ever been done to take possession? and says, "This involves the further question of when, if there be an abandonment, the statutory eight-year period begins to run, and this in turn depends upon the meaning of the words, 'when construction is commenced.'" This, the defendant says, is the sole question presented by this appeal in its last analysis.

The right of eminent domain is a right exclusively vested in the sovereign power. Private property can only be taken for public use, and it must appear affirmatively, before private property of an individual can be taken against his will, that the use to which it is put is a public use.

Sec. 1995 gives to railway corporations the right to take and hold so much real estate as may be necessary for the location and construction or convenient use of its railways. This right is granted it by the state, and it is granted upon the theory that railway corporations are quasi public utilities; that the construction of these roads is for the convenience and welfare of the public. The right delegated is the right to take private property and hold it for a public use, and the companies are subject to state control under proper legislation. The right to take and the right to hold must depend upon the initial fact that the property is taken or held for public use, and not for private use, although there may be private gain in the operation of the road itself.

Sec. 2015 of the Code provides:

"Where a railway constructed in whole or in part has ceased to be operated for more than five years; or where the construction of a railway has been commenced and work on the

same has ceased and has not, in good faith, been resumed for more than five years, and remains unfinished; or where any portion of any such railway has not been operated for four consecutive years, and the rails and rolling stock have been wholly removed therefrom; it shall be treated as abandoned, and all rights of the person or corporation constructing or operating any such railway, over so much as remains unfinished or from which the rails and rolling stock have been wholly removed, may be entered upon and appropriated as provided in the next section. If the railway or any part thereof shall not be used or operated for a period of eight years, or if, its construction having been commenced, work on the same has ceased, and has not been in good faith resumed for eight years, the right of way, including the roadbed, shall revert to the owner of the land from which said right of way was taken.''

Sec. 2016 provides:

''In case of abandonment, as provided in the preceding section, any other corporation may enter upon such abandoned work, or any part thereof, and acquire the right of way over the same, and the right to any unfinished work or grading found thereon, and the title thereto, by proceeding as near as may be in the manner provided in this chapter; but parties who have previously received compensation in any form for the right of way on the line of such abandoned railway, which has not been refunded by them, shall not be permitted to recover the second time. The value of such roadbed and right of way, excluding the work done thereon, when taken for a new company, shall be assessed for the benefit of the former company or its legal representative.''

As we understand and interpret these statutes, the first provisions of Sec. 2015 may be divided as follows: Where a railway, constructed in whole or in part, has ceased to be operated for more than five years, the right of the party

condemning it for a public use, and the rights acquired to construct a railroad for a public use, are to be treated as abandoned as to that company; and this is true where the construction of the road has been commenced, and work on the same has ceased, and has not in good faith been resumed for more than five years and remains unfinished, or where any portion of such railway has not been operated for four consecutive years, and the rails and rolling stock have been wholly removed therefrom. ·

The right of a railroad company to take private property rests upon the thought that the taking is for a public use, and is to be devoted to a public use. The mere taking for a public use serves no public purpose. The public is served when it is devoted to the use on which the right to take depends. When the right to take for a public use is given, the obligation to devote it to a public use is created, and that it will be so used is implied. The legislature, then, when it granted to railway companies the right to take private property for public use, undoubtedly intended that it should be put to a public use when taken. It had, therefore, a right to limit the time in which the company, as a pledge of good faith in the taking, should devote it to the public use for which it was taken, and had a right to say to the company exercising this power, "You may take private property for a public use; but if you do so, you must devote it to the public use for which it was taken. If you fail to do this, the property shall revert to the person from whom you took it," and the state did say to this company, and to all companies, "When you take private property for a railway, and the railway or any part thereof shall not be used or operated for a period of eight years, or if, having commenced its construction, you cease to work it, and do not in good faith resume the work for eight years, the right of way acquired by your condemnation proceedings, and the roadbed shall revert to the original owner." The statute gives to the condemning company eight years in which to demonstrate its good faith in

taking, and if it fails to do this for five years, any other company (the land having been properly condemned for public use) may enter upon the condemned land and continue the work and devote it to the use for which it was originally taken. But if neither the condemning company nor any other company does avail itself of the provision and demonstrate its good faith by complying with the requirements of the statute, then at the end of eight years, the right acquired in the condemnation proceedings will be deemed to have been abandoned, and the property reverts to the original owner.

Unquestionably, the statute gives to the condemning company eight years in which to demonstrate its good faith in the taking of the private property by devoting it to the public use. If, after five years, it becomes apparent from its conduct, as recited in the statute, that it has not and is not devoting it to the public use, then the door is open to any other company to come in and complete the purpose of the condemnation by devoting the condemned property to the public use for which it was taken; but if neither the taker nor some other company having authority to act enters upon and devotes it to the public purpose, then it will be deemed that the public purpose for which it was taken has been abandoned, and the property reverts.

The company acquired this right to take this property through the state, and under the statute hereinbefore set out. It lost its right by its failure to devote it to the public use for which it was taken. Its right to take came from the state. It lost its right by failing to comply with the conditions imposed by the state upon the exercise of its right. The same power that gave the right is the same power through which it is taken away.

Sec. 2016 in its provisions has relation to the first part of Sec. 2015. The last paragraph of Sec. 2015 is an independent provision limiting the right of a railway company, after condemnation proceedings, to eight years in which to use and operate its road, and in which to devote the property

taken to a public use. It expressly says, "If the railway or any part thereof shall not be used or operated for a period of eight years, the right of way, including the roadbed, shall revert to the owner of the land from which it was taken, or if, its construction having been commenced, work on the same has ceased and has not been in good faith resumed for eight years, the land reverts to the original owner."

This, we think, is consistent with the holding in *Remey v. Iowa Central Ry. Co.*, 116 Iowa 133; *Gray v. Iowa Central*, 129 Iowa 68.

It is said, however, that the eight-year statute of limitations does not commence to run until the construction has been actually commenced, and work thereafter has ceased and has not been continued in good faith or resumed. This railway company undertook to build a road from Greenfield to Winterset. They had a right of way surveyed, marked out by stakes, indicating the direction of the road, the territory over which it would pass, and its limits. To construct this railway, it was necessary to commence somewhere. They did commence at Winterset, and, as we take it, at Greenfield, and constructed a roadbed a large portion of the way between Winterset and the land in controversy, and a large portion of the roadbed between Greenfield and this land. To say that they had not commenced the construction would be to say that the construction was not commenced until the whole roadbed had been built. To say that the words "the construction" of a railway (to start the limitation against any particular landowner) required that the building of some portion of the road had been commenced on his land would be an unreasonable limitation on the words, "its construction having been commenced." Its construction means the construction of the contemplated railway. We find nothing in this point made by appellant, and it is not necessary to go into a discussion as to whether the stakes on plaintiff's land were grade stakes or survey stakes. The construction of the

2. EMINENT DO- MAIN: railway right of way: statute of limitation: "commencement of construction."

contemplated road had been commenced.    The work had
ceased, and had not been resumed in good faith at the time
this action was commenced.

It is next contended that the plaintiff is not entitled to
maintain this action because he has not refunded the money
received by him from the defendant.    There is no provision
in this statute for the refunding of the money
by a landowner in the event the condemning
company has failed for the statutory period
to devote the condemned property to the pub-
lic use.    The company simply has lost its
right by its failure to devote the land to the
purposes for which it was taken, and when it lost its right,
by the terms of the statute, the land reverted to the original
owner, and nothing can be added to the plain wording of the
statute by construction.

1, 3. EMINENT DO-
MAIN: rail-
ways: right
of way:
abandonment
of work: re-
version of
title: return
of condemna-
tion money.

It is contended that the holding in the *Remey* case is
inconsistent with what was said by this court in *Noll v. Ry.
Co.*, 32 Iowa 66; *Dubuque & D. Ry. Co. v. Diehl*, 64 Iowa
635, and *C. M. & St. P. Ry. v. Bean*, 69 Iowa 257.    As to this,
we are prepared to say that in so far as these cases are incon-
sistent with the holding in the *Remey* case, they are hereby
overruled.

The main questions considered are so fully discussed in
the previous case of *Remey v. Iowa Central Ry. Co., supra*,
that we do not feel that anything farther need be said, and
the case is therefore—*Affirmed*.

LADD, WEAVER, EVANS and PRESTON, JJ., concur.

DEEMER, C. J. (dissenting).—I.    This case is peculiar in
its facts, and in the relief asked and granted.    It appears that
plaintiff, who has in no manner been disturbed in his posses-
sion of a strip of land condemned for a railway, and who re-
ceived full compensation, not only for the strip, but for all
damages incident to the permanent use of the right of way
for railway purposes, is permitted not only to use the land

but to have his title thereto quieted against the condemnor, without any proof of abandonment by the railway company, save as it is claimed there was an abandonment under certain sections of the Code, to which reference will hereinafter be made, notwithstanding he has had full payment for the land and full enjoyment, not only of the land, but of the money paid him therefor as well, since the land was sought to be condemned.

Plaintiff is in a court of equity asking that the title be decreed in him, because it is equitable for him to have it under the circumstances disclosed. I do not think it either right or equitable that he should have both the land and the money; and unless there be some express statutory provision giving it to him, I think he should be defeated.

Plaintiff does not claim an abandonment save under Sec. 2015 of the Code, referred to by the majority; and that his petition does not make out a case of abandonment under the general law is clear.

In the absence of statute, the mere fact that a railway is not built over a condemned strip of land for a period of thirteen years is not an abandonment. *McClain v. C. R. I. & P. Ry. Co.*, 90 Iowa 646; *Barlow v. C. R. I. & P. Ry. Co.*, 29 Iowa 276. And this is especially true where the owner of the servient estate does no act to prevent its use. *Noll v. D. B. & M. R. R. Co.*, 32 Iowa 66, and cases cited.

Plaintiff has done nothing to prevent the actual use of the land; and according to the testimony, has never been disturbed in his possession. If his claim of title were founded on adverse possession, which presumes a grant, his action would necessarily fail.

II. But it is said that Secs. 2015 and 2016 entitle plaintiff to the relief demanded. These sections do not, to my mind, cover the case: first, because work was never commenced upon the strip of land in controversy; and, second, because plaintiff has never refunded the purchase price of the land,

and therefore is not entitled to "have his cake, and eat it too."

This matter has been thoroughly considered in many cases which have heretofore reached this court in other forms, and they are not in harmony. See cases heretofore cited, and *C. M. & St. P. Ry. Co. v. Bean,* 69 Iowa 257; *Dubuque R. R. v. Diehl,* 64 Iowa 635; *Remey v. R. R.,* 116 Iowa 133; *Fernow v. R. R.,* 75 Iowa 526. Other cases, not officially reported, were affirmed by operation of law because of an equal division of the court. My views upon the statutes now under consideration are fully expressed in the dissenting opinion in the *Remey* case, *supra.*

Aside from this, our difficulties in the past are not necessarily involved here. This case involves the single proposition: May one who has had full pay for his land, taken for railway purposes, after the lapse of eight years, no work having been done upon the land at any time, have his money and the use thereof, and at the same time have a decree quieting title to the land itself on the theory that he has again become the owner of it by reason of abandonment? I do not think there is any case so holding, and am of opinion that the petition should have been dismissed.

I would therefore reverse the judgment.

SALINGER, J., joins in this dissent.