**CITY OF DES MOINES, Iowa, Appellee,**

v.

**David LOHNER, Appellant.**

No. 53148.

Supreme Court of Iowa.

June 10, 1969.

Rex Darrah and Emerett C. Hansen, Des Moines, for appellant.

Philip T. Riley, Anthony T. Renda, John F. McKinney, Jr., Gary H. Swanson, and Robert D. McAllister, Des Moines, for appellee.

LARSON, Justice.

This is a suit in equity brought by the plaintiff City of Des Moines, Iowa, to permanently enjoin the defendant David Lohner from occupying and using specifically-described tracts of land for an automobile salvage and wrecking yard, as an alleged violation of the zoning ordinances of the city. By way of cross-petition defendant prays that the plaintiff city be ordered to issue to him a certificate of occupancy for the operation of an automobile wrecking yard on the premises, and be restrained from harassing him or attempting to enforce paragraph 3 of section 2A-21 of its zoning ordinance.

The trial court permanently enjoined defendant from conducting, occupying, or using his property as an automobile salvage yard, and granted him 120 days within which to comply with the terms and conditions of the order. Defendant appealed. We reverse.

The propositions presented by this appeal are primarily questions of law. Pertinent facts were established without material dispute. The zoning ordinance No. 7226 in question went into effect July 16, 1965. Section 2A-21, "M-2" District Regulations, involved herein, designated "Heavy Industrial Districts", provides:

"Statement of Intent. The 'M-2' district is intended and designed to provide areas of the city for activities and uses of heavy industrial character. Since this is the least restrictive of any district, almost any use is permissible, with the exception of a small number of uses which by reason of certain undesirable characteristics are subject to city council approval in accordance with appropriate safeguards. In addition, no residential uses are permitted.

"A) Principal Permitted Uses. A building or premises may be used FOR ANY PURPOSE whatsoever provided the regulations listed in sub-paragraphs 1, 2, and 3 below are met:

"1. No occupancy permit shall be issued for any use in conflict with any ordinance of the city of Des Moines or law of the State of Iowa regulating nuisances.

"2. No occupancy permit shall be issued for any dwellings, school, hospital, clinic, or other institution for human care, except where incidental to a permitted principal use.

"3. The uses hereinafter listed shall be permitted subject to approval by the city council after public hearing, and after report and recommendation by the plan commission. If any application under this section of the ordinance shall have been denied by the city council, then no new application covering the same property or the same property and additional property shall be filed with or considered by the city council until one (1) year shall have elapsed from the date of the filing of the first application. In its determination upon the particular uses at the location requested, the city council shall consider all of the following provisions:

"1. That the proposed location, design, construction and operation of the particular use adequately safeguards the health, safety and general welfare of persons residing or working in adjoining or surrounding property;

"2. That such use shall not impair an adequate supply of light and air to surrounding property;

"3. That such use shall not unduly increase congestion in the streets, or public danger of fire and safety;

"4. That such use shall not diminish or impair established property values in adjoining or surrounding property; and

"5. That such use shall be in accord with the intent, purpose and spirit of this ordinance and the comprehensive plan of the city of Des Moines.

"The uses subject to the above provisions are as follows:

"a. Abbatoirs and slaughter houses or stock yards.

"b. Acid manufacture or wholesale storage of acids.

"c. Automobile, tractor or machinery wrecking and used parts yards; provided that any wrecking operation is carried on within a building completely enclosed with walls and roof and the yard completely enclosed with a wall or fence, reasonably maintained, at least six (6) feet high completely obscuring the activity. There shall be only one opening in the wall or fence facing any public street for each two hundred (200) feet of length.

"d. Cement, lime, gypsum, or plaster of paris manufacture.

"e. Distillation of bones.

"f. Explosive manufacture or storage.

"g. Fat rendering.

"h. Fertilizer manufacture.

"i. Garbage, offal or dead animal reduction or dumping.

"j. Gas manufacture and cylinder recharging.

"k. Glue, size or gelatin manufacture.

"l. Junk, iron or rags, storage or bailing, and waste paper yards, where the premises upon which such activities are conducted are wholly enclosed within a building wall or fence not less than six (6) feet in height, completely obscuring the activity.

"m. Petroleum or its products, refining or wholesale storage of, and asphalt plants.

"n. Rubber goods manufacture.

"o. Sand or gravel pits.

"p. Smelting of tin, copper, zinc, or iron ores.

"q. Transmitting stations.

"r. Wholesale storage of gasoline. * * "

The trial court found the defendant's property had been used as an automobile salvage yard from 1954 to date and had been so used by defendant since 1962, but that he had failed to establish his use as a nonconforming use and had never obtained a certificate of occupancy to so use his property. It held he had failed to obtain the necessary council approval of this use under paragraph 3 of section 2A-21, M-2, of the city zoning ordinance, and was not entitled to an occupancy permit. No failure to conform to paragraphs 1 and 2 is alleged.

Although paragraph 3 employs the words "uses hereinafter listed", it is quite clear those enumerated "a" through "r" must be classified as "special uses" under the heavy industrial district, which raises the usual questions as to the authority of a municipality (1) to provide for special uses in its comprehensive zoning ordinance, and (2) to designate any officer or body, including the council itself as the party or parties empowered, when acting within adequate guidelines, to approve or disapprove a proposed use in that district and, as to the effective restrictions, if any, found in the state municipal zoning laws, chapter 414 of the Code.

It is appellant's contention that paragraph 3 is invalid inasmuch as it allocates to the city council the power to approve or disapprove a use of a premise for a purpose otherwise proper under Zone M-2, designated heavy industry in the comprehensive plan. He argues the attempt to set guidelines, provide hearings, and make references to the zoning commission are not sufficient to permit the legislative body the right to reserve unto itself the power to decide each use on a case-to-case basis, and that the municipal zoning law, chapter 414 of the Code, does not permit the council to administratively or judicially determine

whether such a use is or is not permissible under the enacted ordinance. He maintains this record clearly discloses the discriminatory and unequal application of that provision, and illustrates the reason why such a provision is not permitted by the zoning statutes and why its application would violate his rights guaranteed by Article I, Sections 6 and 9, of the Constitution of the State of Iowa, and Amendments 5 and 14 of the Constitution of the United States.

■ We find merit in appellant's statutory contentions and thus do not reach the constitutional questions presented. We do not consider constitutional questions unless it is necessary for the disposition of the case. Bond v. Wabash, St. Louis & Pacific Ry. Co., 67 Iowa 712, 718, 25 N.W. 892, 894; Dubuque & Dakota Ry. Co. v. Diehl, 64 Iowa 635, 640, 21 N.W. 117, 120.

I. Prior to the enactment of Chapter 235, Sixtieth General Assembly, we had consistently held municipalities could exercise only such powers as are expressly granted or necessarily implied. Stoner McCray System v. City of Des Moines, 247 Iowa 1313, 1322, 78 N.W.2d 843, 849, 58 A.L.R.2d 1304, 1311, and citations. Chapter 235 amended section 368.2, Code 1962, and provided among other things that the rule that cities and towns have only those powers expressly conferred by statute was no longer valid, and that such corporations were given broad and implied powers over local and internal affairs which may exist within constitutional limits. See Richardson v. City of Jefferson, 257 Iowa 709, 713, 134 N.W.2d 528, 531. However, we note section 368.2, as amended, still provides: "Cities and towns * * * shall have the general powers and privileges granted, and such others as are incident to municipal corporations of like character, *not inconsistent with the statutes of the state,* * *." (Emphasis supplied.) Although not applicable here, see chapter 462, Acts of the 62nd G.A., as to restrictions on municipal authority. It is not claimed chapter 414 of the Code does not govern the rights and authority of the cities and towns as it pertains to zoning, and thus we must look to these statutes to determine the limitations, if any, of the council's power and authority in this field. Generally speaking, it grants the cities power to regulate, restrict and designate the location and use of premises, structures and buildings within the corporate limits. Section 414.1, Code 1966.

Section 414.2 provides that the legislative body of the municipality "may divide" the city into districts "to carry out the purposes of this chapter", and "within such district it may regulate and restrict * * *", but also qualifies these powers by requiring that "all such regulations and restrictions shall be uniform for each class or kind of buildings throughout each district, * * *."

The basis for these regulations and restrictions is set forth in section 414.3 of the Code and is not dissimilar from those general guidelines found in paragraph 3 of the ordinance here in issue. Section 414.3 provides:

"Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the street; to secure safety from fire, flood, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements.

"Such regulations shall be made with reasonable consideration, among other things, as to the character of the area of the district and the peculiar suitability of such area for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city or town."

Section 414.4 provides for a public hearing pursuant to notice before council action on regulation, restriction, or a district boundary is taken.

Appellee maintains it complied with the requirements above set forth. It points out that the ordinance provides for a reference to the zoning commission for recommendation and a public hearing, that council action is governed by guidelines set out in the ordinance, and that the right to appeal is not restricted. We agree these things were done and, were it not for the fact that the statute sets forth and designates the exclusive authority and procedure in dealing with such matters or uses, the council might well be the best body to consider and pass upon special uses applications.

II. Although considerable effort was made by defendant to prove the council's action in passing upon appellant's application was discriminatory, arbitrary, and capricious, we do not find it necessary to pass upon that issue here. Nor do we attempt to pass upon the sufficiency or adequacy of the guidelines set forth in the ordinance. Unless the council was authorized and empowered by statute to act on special uses such as appear in this ordinance, it is of no consequence whether the guidelines were adhered to or the determination was proper.

III. Section 414.7 of the Code provides for and requires that a board of adjustment be appointed which is empowered to make special exceptions to the terms of the ordinances, in appropriate cases, in harmony with the general purpose and intent of the zoning laws. The council is not authorized to grant or reject those exceptions. Depue v. City of Clinton, Iowa, 160 N.W.2d 860, 864. Depue v. City of Clinton was an action for declaratory judgment and injunctive relief seeking to set aside defendant city's grant of a special use exception to allow the use of premises located in a residential area as a nursing home. When the city plan commission recommended against a requested rezoning of the premises, application was made to the city council for a special use permit. Without referring the matter to the board of adjustment, the council granted the application and the plaintiffs appealed.

We held the grant invalid. Therein we considered the contention that special uses and exceptions were in the same category and that the zoning law, chapter 414 of the Code, required all such exceptions and special uses be submitted to the board of adjustment, and held that that was the intent and purpose of the statute. We said therein: "We are satisfied from our examination of the statute and the terminology used by the courts and other authorities in dealing with zoning problems that 'special exceptions' includes 'special uses', and that both must be placed within the jurisdiction of the board of adjustment." This being so, we must hold the council's attempt to provide for its own determination and approval of special uses in paragraph 3 of section 2A-21, M-2, of its ordinance, is in conflict with chapter 414 of the Code and therefore ineffective and void.

In so deciding, we are not to be understood as holding that special uses as such cannot be provided for in municipal ordinances under chapter 414 of the Code. The Code, we believe, presently designates the board of adjustment as the exclusive body to pass upon such matters within proper guidelines placed in the ordinance. As bearing thereon, see Chicago, R.I. & P.R. Co. v. Liddle, 253 Iowa 402, 407, 112 N.W. 2d 852, 855; Depue v. City of Clinton, supra.

IV. Section 414.7, Code of 1966, provides:

"The council *shall* provide for the appointment of a board of adjustment and in the regulations and restrictions adopted pursuant to the authority of this chapter *shall provide that the said board of adjustment may* in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinances in harmony with its general purpose and intent and in accordance with general or specific rules therein contained and provide that any property owner aggrieved by the action of the council in the adoption of such regulations and restric-

tions may petition the said board of adjustment direct to modify regulations and restrictions as applied to such property owners." (Emphasis supplied.)

Section 414.15 of the Code provides an *appeal to the district court* by anyone aggrieved by the board's decision.

Section 414.12 of the Code further provides:

"The board of adjustment *shall have* the following powers:

"1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto.

"2. To hear and decide *special exceptions* to the terms of the ordinance *upon which such board is required* to pass under such ordinance.

"3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." (Emphasis supplied.)

These powers are placed exclusively in the board and effectively restricted by statute. Section 368.2, Code of 1966. See Lloyd E. Clarke, Inc. v. City of Bettendorf, Iowa, 158 N.W.2d 125; Richardson v. City of Jefferson, supra, 257 Iowa 709, 134 N.W.2d 528; Depue v. City of Clinton, supra, Iowa, 160 N.W.2d 860.

Thus, any attempt of a municipality, by ordinance, to place such powers in any other person or body would clearly conflict with the state statutes.

■ The fundamental purpose of the special exception or use is to serve in an ancillary role as an allocator of land use, and is generally used to accomplish use changes without the intervention of a formal amendment by the council. McQuillin, Municipal Corporations, Zoning, § 25.160; Mandelker, Zoning Administration, 1963 Wash.U.Law Quarterly 60, 71–74. In most cases the granting of a special use or exception has successfully withstood constitutional attack. San Mateo v. Hardy, 64 Cal.App.2d 794, 149 P.2d 307; Montgomery County v. Merlands Club, Inc., 202 Md. 279, 96 A.2d 261; People ex rel. Smith v. Walsh, 211 App.Div. 205, 207 N.Y.S. 324; McQuillin, Municipal Corporations, Zoning, supra; Mandelker, Zoning Administration, 1963 Wash.U.Law Quarterly, supra.

■ Being a quasi-judicial or administrative function, the granting of special uses must, of course, be governed by adequate guidelines. Chicago, R.I. & P.R. Co. v. Liddle, supra, 253 Iowa 402, 112 N.W.2d 852. As to what would be an appropriate body, other than the board of adjustment, to pass upon special uses so as not to violate Article III of the Distribution of Powers, Section 1, of the Constitution of the State of Iowa, we at this time venture no opinion. Initially, of course, this is a policy question for the legislature.

■ V. From the record it appears the defendant was operating and using his premises legally in 1965 pursuant to the placing of his property in Zone M-2, and was operating and using his premises after the changeback to Zone M-1 in 1966 as a legal nonconforming use. Thus, at the time of his application he was entitled to a certificate of occupancy, and a refusal to issue the same upon a showing of these facts was wrongful.

This case must, therefore, be and it is remanded for entry of judgment granting defendant's prayer for relief consistent with this opinion.

Reversed and remanded.

All Justices concur.