Frank HOLLAND, Loyal Rue and
Marilyn Rue, Appellants,

and

Norwin Nesheim, Jaerdis Nesheim,
James Fritz and Elizabeth
Fritz, Plaintiffs,

v.

CITY COUNCIL OF DECORAH
and Wal–Mart Stores, Inc.,
Appellees.

No. 00–2113.

Supreme Court of Iowa.

April 2, 2003.

As Amended on Denial of Rehearing
June 16, 2003.

Karl G. Knudson, Decorah, for appellants.

Richard D. Zahasky, Decorah, for appellee City Council of Decorah.

Mark McCormick, Charles F. Becker, and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellee Wal–Mart Stores, Inc.

LARSON, Justice.

This is an appeal in a certiorari case brought by landowners along the Upper Iowa River in Decorah to block the filling of a portion of the floodplain for the purpose of building a Wal–Mart Super Center. The defendants are Wal–Mart and the City Council of Decorah, to which we will collectively refer as Wal–Mart. The district court annulled the writ of certiorari, allowing the project to go forward, and the plaintiffs appealed. The court of appeals reversed, concluding the city council had exceeded its statutory authority in permitting the fill. We agree.

## I. *Facts and Prior Proceedings.*

Under Iowa Code section 455.275(3) (1999), Wal–Mart was required to seek permission from the Iowa Department of Natural Resources (DNR) before filling, excavating, or building on the floodplain. The DNR granted Wal–Mart's application to place fill and excavate on at least part of the property.[1]

In reliance on City Ordinance section 17.120.020, Wal–Mart applied to the Decorah City Council for a permit to place fill on the floodplain. That ordinance provides this with respect to floodplains in the city:

Principal permitted uses. Only the uses of structures or land listed in this section shall be permitted in the F–1 floodplain district:

A. Agriculture, truck gardening, and nurseries, and the usual accessory buildings, but not including livestock feedlots or poultry farms or similar uses; provided, that no permanent dwelling units shall be erected thereon;

B. Forests and forestry preserves, wildlife areas;

C. Publicly owned parks, nature areas, playgrounds, golf courses and similar noncommercial recreational uses;

D. Any use erected or maintained by a public agency, public and private parking lots;

E. Public utility structures, subject to approval of the board of adjustment, except those utilities and structures constructed by the city;

F. *Dumping of approved materials for landfill purposes, subject to prior approval of the city council and appropriate state agencies.*

(Emphasis added.) The last use, "F," is relied on by Wal–Mart, and the interpretation of that provision lies at the heart of this appeal.

In July 1999, before Wal–Mart applied to the city council, it wrote to the Decorah City Administrator to say Wal–Mart would be applying to the board of adjustment for a special exception to the floodplain ordinance. However, the application was never filed. On August 15, 2000, Wal–Mart's representatives appeared before the city council, which, by a four-to-three vote, approved Wal–Mart's request to fill the property. The fill request was presented and granted as part of a plan to build a Wal–Mart Super Center on the site. However, the council's vote only approved the fill; it did not change the zoning of the area or approve a site plan.

A neighboring floodplain owner, Upper Iowa Marine (UIM), also wanted to fill its property in order to construct a building. UIM applied to the board of adjustment for a special exception to the zoning ordinance. (UIM, like Wal–Mart, had previously obtained a permit from the DNR to fill the floodplain.) The board of adjustment denied UIM's fill request, finding it was inconsistent with Decorah's comprehensive zoning plan. The board of adjustment concluded:

Upper Iowa Marine has not met its burden of showing evidence that the granting of the special exception and subsequent filling of the site won't adversely affect public interest.

## II. *Authority of the Board of Adjustment.*

The plaintiffs argue that Wal–Mart's request to place fill on the floodplain should have been submitted to the board of ad-

---

**1.** DNR's permit covered most, but not quite all, of Wal–Mart's property. Under our disposition, it is unnecessary to consider whether this is a fatal defect in the council's proceedings, as the plaintiffs argue.

justment, as Upper Iowa Marine had done, and not to the city council because that is what Iowa Code section 414.7 requires:

> The council shall provide for the appointment of a board of adjustment and in the regulations and restrictions adopted pursuant to the authority of this chapter shall provide that *the said board of adjustment may in appropriate cases and subject to appropriate conditions and safeguards make special exceptions* to the terms of the ordinances in harmony with its general purpose and intent and in accordance with general or specific rules therein contained and provide that any property owner aggrieved by the action of the council in the adoption of such regulations and restrictions may petition the said board of adjustment direct to modify regulations and restrictions as applied to such property owners.

(Emphasis added.)

Under section 414.12,

> [t]he board of adjustment shall have the following powers:
>
> . . . .
>
> 2. To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

We have explained the rationale underlying the dual-board (board of adjustment and city council) approach under chapter 414:

> Standard zoning laws quite uniformly provide for a zoning commission, to hold hearings and make report to the city council. On such report, the city council adopts an ordinance defining the boundaries and describing the various uses that may be made of the land in the use districts laid out, and the height of the structures in the height area districts. It would be impracticable, if not impossi-

ble, for the city council to hold hearings and make decisions in respect to the classifications and restrictions of each individual property, while manifestly a rigid adherence to invariable district lines and designated uses and classifications and height regulations therein would in many cases work unnecessarily individual injustice and hardship, and not only invalidate the zoning as to them, but, by their unreasonable or confiscatory operation as to some, imperil the constitutionality of the ordinance as to all. In order to avoid an unreasonable and arbitrary and unconstitutional operation of the law in specific instances, and also to provide a local board to pass upon individual cases, resort is had to a zoning board of appeal, or in this state to the board of adjustment.

*Anderson v. Jester*, 206 Iowa 452, 457, 221 N.W. 354, 357 (1928) (citations omitted).

■ While Iowa Code section 414.7 states the board of adjustment "*may . . .* make special exception to the terms of the ordinance" (emphasis added), this clearly does not mean some other entity, such as a city council, is empowered to do it if the board does not. In fact, our cases make it clear that such matters are the responsibility of the board of adjustment, not the city council. *See, e.g., City of Des Moines v. Lohner*, 168 N.W.2d 779, 784 (Iowa 1969) ("These powers [under section 414.12] are placed exclusively in the board [of adjustment] and effectively restricted by statute."); *Depue v. City of Clinton*, 160 N.W.2d 860, 862 (Iowa 1968) ("[I]s the jurisdiction of the board of adjustment, conferred by sections 414.7 and 414.12, an exclusive jurisdiction? We think the answer[ ][is] affirmative . . . .").

### III. *Prior Iowa Cases.*

In *Depue* the plaintiffs were neighbors who challenged the action of the Clinton

City Council in granting a special-use permit authorizing the construction of a nursing home in their neighborhood, which was zoned R–1 residential by a 1965 zoning ordinance. The nursing home promoters petitioned the city council to rezone their tracts from R–1 to R–3, which would permit a nursing home. The city council did not act on the rezoning petition, following a negative recommendation by its city planning commission. *Depue,* 160 N.W.2d at 860–61.

The nursing home promoter then applied to the council for a special-use permit. The city planning commission recommended against it. The matter was never referred to the board of adjustment, but it was nevertheless approved by the city council. *Id.* at 861. The city had an interesting ordinance that provided for "special use" applications to be filed with the city council and "special exception" proceedings to be handled by the board of adjustment. We held the ordinance provision that permitted special-use applications to be part of the council's jurisdiction to be void, and the council's action under it to be invalid as well. *Id.* at 862. We said:

> There can be little doubt that power conferred on the board by state statute may not be limited by city ordinance. Insofar as this ordinance conflicts with section 414.12, subd. 3 [delineating powers of the board of adjustment], the statute controls.

*Id.* at 863. We held the council had no jurisdiction to act on the application for special use. We explained the rationale for limiting jurisdiction to the board of adjustment.

> [W]here a legislative body establishes standards in advance, the application of those standards to a specific situation is an administrative or quasi-judicial act. The application cannot be handled by the legislative body that created the

standard without danger of contravening the separation of powers doctrine. When the Iowa legislature mandated a board of adjustment, whose members are appointed for long terms on a staggered basis, and provided for appeal directly to the courts, it eliminated the objection. Thus the constitutional issue does not arise.

*Depue,* 160 N.W.2d at 864 n. 5.

In *Lohner* the city council ruled that Lohner could no longer use his land for a salvage yard, even though the operation was initially legal. 168 N.W.2d at 780. The city ordered cessation of the salvage operation on the strength of this ordinance:

> 3. The uses hereinafter listed shall be permitted subject to approval by the city council after public hearing, and after report and recommendation by the plan commission. If any application under this section of the ordinance shall have been denied by the city council, then no new application covering the same property and additional property shall be filed with or considered by the city council until one (1) year from the date of the filing of the first application. In its determination upon the particular uses at the location requested, the city council shall consider all of the following provisions[.]

*Id.* Lohner had been operating his salvage yard under a 1965 ordinance that specifically allowed salvage yards in the area designated as M–2, heavy industry, in the city's comprehensive plan. In effect, the city attempted to "unauthorize" a use previously and expressly allowed as a use in the comprehensive plan. We held this was improper because issues such as special exceptions must be resolved by the board of adjustment. We said:

> "We are satisfied from our examination of the statute [chapter 414] and the ter-

minology used by the courts and other authorities in dealing with zoning problems that 'special exceptions' includes 'special uses,' and that both must be placed within the jurisdiction of the board of adjustment." This being so, we must hold the council's attempt to provide for its own determination and approval of special uses in paragraph 3 . . . is in conflict with chapter 414 of the Code and therefore ineffective and void.

*Lohner,* 168 N.W.2d at 783 (quoting *Depue,* 160 N.W.2d at 864); *see also* Roger A. Cunningham, *Land Use Control—The State and Local Programs,* 50 Iowa L.Rev. 367 (1965).

It is clear that the planning commission may be used in a recommendatory capacity, and it is also clear that the board of adjustment itself can be reduced to a recommendatory role. Consequently, some municipalities have sought to bypass the board of adjustment entirely, providing that the local governing body shall grant "special exceptions" or "special use permits" on recommendation of the planning commission. Whether such a procedure will be generally sustained in the courts is not clear.

Cunningham, 50 Iowa L.Rev. 400–01 (footnotes omitted). It is clear, for the reasons to be discussed, that Iowa does not allow a council to bypass boards of adjustment.

## IV. *The Decorah Ordinance.*

■ Wal–Mart contends the council's grant of permission to fill Wal–Mart's land was not a "special use" because "dumping of approved materials" in the floodplain is listed as a *"principal permitted use"* (emphasis added) under ordinance section 17.120.020(F). It seeks to distinguish *Lohner* and *Depue* on that basis.

As to a "permitted use," Wal–Mart argues, the council has only a "limited, technical review" to determine compliance with city or state regulations. These review responsibilities, according to Wal–Mart, were limited to (1) a simple yes or no response to the question of whether Wal–Mart had obtained a fill permit from the DNR and (2) whether the fill material was free from waste materials. Wal–Mart contends the council was not obliged to examine any broader issues, such as whether the proposed change was consistent with the city's comprehensive plan.

It is true, as Wal–Mart argues, the ordinance in *Lohner,* that we struck down as being beyond the jurisdiction of the city council, prescribed detailed inquiries and findings to be made by the city council. The ordinance in *Lohner* provided for notice and hearing on special-use applications presented to the city council and stated:

In its determination upon the particular uses at the location requested, the city council shall consider all of the following provisions. . . .

5. That such use shall be in accord with the intent, purpose and spirit of this ordinance and the comprehensive plan of the city of Des Moines.

*Lohner,* 168 N.W.2d at 780. In contrast, the Decorah ordinance on which Wal–Mart relies requires no findings by the council except the abbreviated inquiries described above. Wal–Mart contends that this is a basis for distinguishing *Lohner.* We believe in fact the effect of the ordinances, as applied by the city councils, are the same. The ordinances were interpreted by the respective city councils to grant powers in each case to the council that chapter 414 vests in boards of adjustment. The ordinance in the present case, if interpreted as Wal–Mart urges, would grant authority to the city council to rule on applications to fill floodplains with only a perfunctory re-

view of the circumstances (DNR approval[2] and the quality of the fill) without any inquiry on essential issues surrounding such a matter such as the impact on a city's comprehensive plan.

Zoning must be in accordance with a comprehensive plan. Iowa Code § 414.3; *Wolf v. City of Ely*, 493 N.W.2d 846, 849 (Iowa 1992); *Brackett v. City of Des Moines*, 246 Iowa 249, 256–57, 67 N.W.2d 542, 546 (1954). We have noted

> [a] majority of courts in states where zoning must be "in accordance with a comprehensive plan" hold a plan external to the zoning ordinance is not required. However, an increasing number of legislatures specifically require that a plan be adopted. The "comprehensive plan" requirement was imposed to prevent piecemeal and haphazard zoning. The word "plan" connotes an integrated product of a rational process; the word "comprehensive" requires something beyond a piecemeal approach.

*Wolf*, 493 N.W.2d at 849 (citations omitted).

### V. *The Council Meeting.*

Wal–Mart's application to fill came up for consideration at a regular meeting of the city council at 7:30 p.m. on August 15, 2000. Seven members of the council were present, as well as a number of interested residents. The mayor opened the discussion to the public allocating "thirty to forty-five" minutes for discussion. Loyal Rue, one of the plaintiffs in this appeal, commented that it would be inappropriate to approve the fill application while an appeal of the DNR permit was pending. Another resident's letter, which was read

into the minutes, said in part, "if we let them put in fill before rezoning we are putting the cart before the horse." The minutes also showed that person "wondered, why, when other communities are taking structures out of the floodplain at great cost, we are in a rush to build in ours." Others asked what would happen if the fill was in place and plans for construction of the store were rejected—specifically, who would be responsible for removing it.

Another resident noted the "planning and zoning commission" had not approved the application. He suggested there be a public hearing on the application and said "granting permission will be contrary to city policy." Another noted that UIM had lost its bid with the board of adjustment to fill its land and, according to the minutes, that person "wondered if [UIM], a small local business which was turned down by the Board of Adjustment, would be able to come back now that 'big business' has made this request."

Others raised environmental issues and questions about where the fill would be obtained. One speaker, apparently alluding to Wal–Mart's influence, said, "They come, they ask, they get." According to the minutes, one individual's concern was more practical: "Now that he knows Wal–Mart has taken care of the floodplain issue his only concern is what is going to be in the deli section."

Other residents spoke in favor of Wal–Mart's plan, one accusing the opponents of "just [wanting] to stall progress in Decorah." The same person questioned whether the land was even a floodplain, saying

**2.** Wal-Mart attributes considerable weight to the fact that the DNR had approved a filling proposal. However, even assuming the city council could validly delegate to the DNR the authority to effect a change in the city's comprehensive plan, the floodplain approved by the DNR was of a smaller dimension. The city's comprehensive plan covered areas subject to inundation by a 29,000-cubic-feet-per-second flood, while the DNR standard covers only a 22,300-cubic-feet-per-second flood area.

"I've spoken with eighty-nine and ninety-year-old men and they have never seen water on that land."

A council member suggested some type of compromise, that the matter be studied further, and that a task force be formed, saying, "This doesn't need to be decided tonight." This suggestion failed, and at the end of the time allotted by the mayor for public discussion, the mayor announced an end to the discussion. The council voted four to three to approve the application. The meeting was obviously heated. The minutes noted one resident "was shocked by the low level both sides have resorted to and feels the language used has been inappropriate."

■ The issuance of special-use permits is quasi-judicial or administrative. *Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 885 (Iowa 1976) (citing *Lohner*, 168 N.W.2d at 784). The problems with allowing a political, legislative body such as a city council to rule on applications of this nature (in addition to lacking statutory authority) are apparent in this case. The city council had no hearing procedures, notice requirements, or the type of guidelines that would govern the board of adjustment.

Even on the cold minutes of the meeting, it is apparent the council would have known by the time the discussion was concluded, if they did not already know, they had a tiger by the tail. The residents were deeply divided on the issue, raising concerns about the environmental impact, the fairness of the proceedings (especially in view of the fact the board of adjustment had denied a similar permit), and the prospect of 120,000 cubic yards of fill being placed in the floodplain in the event the DNR appeal was successful or the construction plans were thwarted for some other reason.

## VI. *Disposition.*

Decorah's comprehensive plan expressly provides for the integrity of its floodplains. Goal number five is:

To provide that in the development and implementation of all land-use plans and policies, protection of the environment is ensured, including:

a. Aesthetic quality; archeological, historic, and cultural values; the unique geology of the area, and the woodlands and wetlands.

. . . .

c. The floodplains of the planning area as natural resources that should be preserved for use as permanent open space for parks and recreational uses and for wildlife protection.

d. Regulation of development in the floodplains to protect life and property, prevent water pollution, and reduce costs to taxpayers.

The city council did not discuss or make any findings with respect to the city's comprehensive plan, as far as the record shows.

We conclude this case does not turn on the question of whether the "permitted use" language of section 17.120.020(F) is actually a special use or special exception, as the plaintiffs claim—or whether, as Wal–Mart claims, it is a broad grant of powers to the council. If, in fact, the permitted use under this section is construed as a special use or a special exception, the case is controlled by *Lohner* and *Depue*, and the council's actions were void. Wal–Mart does not challenge that.

If, on the other hand, the ordinance is applied as a broad grant of authority by the council to itself, the application of the ordinance is illegal. As we noted in *Lohner*,

the council's attempt to provide for its own determination and approval of special uses ... is in conflict with chapter 414 of the Code and therefore ineffective and void.

168 N.W.2d at 783.

If Wal–Mart's interpretation of ordinance section 17.120.020(F) is correct, the ordinance would violate Iowa Code section 414.3, which requires ordinances to comply with the city's comprehensive plan. Under Wal–Mart's interpretation, the ordinance grants broad authority to the council to alter the character of the floodplain without any consideration of the city's comprehensive plan. By assuming, through the ordinance, the authority to decide this issue, the council has violated Iowa Code sections 414.7 and 414.12, concerning the jurisdiction of the board of adjustment. To the extent the council has claimed authority to grant the fill permit in this case, it has diminished the jurisdiction of the board of adjustment. As we have said,

> [t]he board [of adjustment] having been created, its jurisdiction is fixed by statute, not by city ordinance.
>
> . . . .
>
> There can be little doubt that power conferred on the board by state statute may not be limited by city ordinance. Insofar as this ordinance conflicts with [the statute] the statute controls.

*Depue,* 160 N.W.2d at 863.

We conclude the actions taken by the city council in reliance on its interpretation of ordinance section 17.120.020(F) are null and void. We therefore affirm the decision of the court of appeals and reverse the judgment of the district court. We remand to the district court for an order sustaining the writ of certiorari.

**DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF**

**DISTRICT COURT REVERSED; CASE REMANDED.**

All justices concur except CADY, J., who concurs specially, and CARTER, J., who dissents.

CADY, Justice (concurring specially).

I agree with the position taken by the dissent. The board of adjustment has no role in this proceeding. The ordinance in dispute only authorizes the city council to approve "dumping ... for landfill purposes." This power granted to the city council does not interfere with the comprehensive plan of the city or the role of the board of adjustment. Nevertheless, I agree with the result reached by the majority because the request submitted by Wal–Mart did not constitute "dumping ... for landfill purposes." It was, in reality, a request to transform the character of the land to change the permitted use of the land. The ordinance was never contemplated to be used in such a manner. It did not apply to this case and the city council had no authority to grant the request.

CARTER, Justice (dissenting).

I dissent.

The statute establishing the role of the board of adjustment provides that

> [t]he council shall provide for the appointment of a board of adjustment and in the regulations and restrictions adopted pursuant to the authority of this chapter shall provide that *the said board of adjustment may in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinances ....*

Iowa Code § 414.7 (emphasis added). Wal–Mart's request to place fill in the floodplain did not require any special exception to the local ordinance. That ordinance by its terms permitted that use sub-

ject to approval by the city council. In no way can the granting of that approval be considered to be a "special exception" to the terms of the local ordinance. Consequently, the board of adjustment has no role to play in this proceeding.

The issue in the *Lohner* case did involve an exception to a local ordinance and, consequently, unlike the present case, did call for action by the board of adjustment.

If there is some reason that the type of ordinance that the City of Decorah adopted in the present case is invalid, the appellants have certainly failed to point out that reason. I would affirm the judgment of the district court.